BEST COIN-OP, INC., Plaintiff-Appellee, v. PAUL F. ILG SUPPLY COMPANY, INC., Defendant-Appellant.

First District (5th Division) No. 1—88—0727

Opinion filed September 29, 1989.

Dawn M. Langer, Nancy R. Cass, and Marshall N. Dickler, all of Marshall N. Dickler, Ltd., of Arlington Heights, for appellant.

Glenn Seiden and James A. Graham, both of Glenn Seiden & Associates, of Chicago, for appellee.

JUSTICE COCCIA delivered the opinion of the court:

This appeal is from Judge Berman's order denying defendant's motion to dismiss plaintiff's action at law, charging defendant with tortious interference with its contract to operate a laundry room facility in the Loch Lomond Apartments, on the basis of *res judicata*. Defendant appeals pursuant to Supreme Court Rule 304 (107 Ill. 2d R. 304(a)).

Although the sole issue before us is the propriety of that ruling, a review of the very convoluted procedural history of the legal relationship of these parties, which gave rise to two previous appeals, is pertinent to the disposition of the issues raised herein.

Plaintiff, Best Coin-Op, Inc. (Best Coin), pursuant to a written agreement, operated laundry room facilities in a 176-unit residential building. The agreement provided for a 10-year initial term, from November 1977 to March 1988, with an optional seven-year extension. In 1979, the apartments were converted to condominiums under the name Old Willow Falls Condominium Association (Old Willow Falls). Plaintiff continued to operate the laundry room under the terms of the agreement. On March 31, 1983, Old Willow Falls notified plaintiff that the agreement had terminated by operation of law when the condominium conversion occurred. It ordered plaintiff to remove its equipment within 10 days. Plaintiff refused and notified Old Willow Falls, through its attorney, that legal action would be taken if plaintiff were ousted from the premises. Sometime between June 1 and June 27, 1983, Old Willow Falls disconnected the machines.

On June 19, 1983, plaintiff filed a complaint against Old Willow Falls in the circuit court of Cook County, chancery division, requesting injunctive relief and specific performance of the "lease" agreement. Plaintiff alleged that by its express terms, the contract was binding upon Old Willow Falls, as successor in interest to the original lessor, and that plaintiff had been illegally evicted from the premises. Best Coin sought a mandatory order requiring reconnection of its equipment, preliminary and permanent injunctions prohibiting Old Willow Falls from interfering with its rights under the agreement, an order directing Old Willow Falls to perform according to the terms of the lease, and lost profits sustained during the interruption of its possession of the laundry room. Plaintiff also filed an emergency motion seeking reconnection of its equipment, a temporary restraining order, and a preliminary injunction to preserve the *status quo* pending a final hearing on the merits.

In July 1983, Paul F. Ilg Supply Company, appellant herein, peti-

tioned the court to intervene in the case. Ilg had been operating the same laundry room facilities under a May 19, 1983, lease (effective June 1, 1983), with Old Willow Falls. Plaintiff objected to Ilg's intervention, in part on grounds that it would confuse and delay the proceedings and also because the merits of the case were to be heard in arbitration by the express terms of the contract, making the petition to intervene "irrelevant." On August 5, 1983, the court entered an order granting Ilg leave to intervene as an additional party.

Old Willow Falls moved to dismiss plaintiff's complaint on the following alternative grounds: (1) that the agreement in question was not a lease, and the complaint therefore failed to state a cause of action; and (2) that if it was a lease, plaintiff was itself in breach and not entitled to equitable relief. Ilg filed its own motion to dismiss, alleging that (1) Best Coin's complaint failed to state a cause of action for breach of a lease; (2) the agreement by its terms required any dispute to be first submitted to arbitration, which had not been done, and (3) plaintiff had breached its own agreement and was not entitled to equitable relief. In its memorandum in support of this motion, Ilg argued that by bringing this lawsuit in contravention of the arbitration clause, plaintiff was guilty of "unclean hands" and could not avail itself of injunctive relief. Ilg also maintained that the alleged lease was in reality a license because it was expressly assignable and because it did not manifest the lessee's "exclusive possession" or specify the exact "extent and bounds" of the premises.

Prior to a hearing on the petition for a preliminary injunction, the trial court ruled that the matter would be held in abeyance pending arbitration. However, at the parties' request, Judge Joseph M. Wosik, the chancery judge presiding, heard arguments on that issue as well as on the issue of whether plaintiff had established its entitlement to preliminary injunctive relief. On August 15, 1983, the following colloquy occurred:

"MR. STONE [Counsel for plaintiff]: Finally, Paragraph 13 only says that any controversy or dispute should go to arbitration. We contend, your Honor, that they haven't followed the arbitration provision themselves. They have just thrown us out on the street. Now, they are raising arbitration against us. We merely want to be restored to possession, your Honor.

THE COURT: It is this Court's opinion, because of the facts and circumstances and diversions of opinion of you lawyers as well as in my mind, the law that is applicable herein is that a TRO should not be granted in this matter. It should be referred to an arbitration board. I will continue the case until that matter

has been disposed of.

MR. O'BRIEN [Counsel for plaintiff]: Is there a ruling on their Motion to Dismiss, your Honor? We need that ruling. Are you sustaining the Motion to Dismiss?

THE COURT: I'll sustain their Motion to Dismiss."

Judge Wosik declined a request by Mr. O'Brien to explain the grounds upon which the complaint was dismissed. On August 17, 1983, the following order was entered:

"IT IS HEREBY ORDERED:

1. That the Motion for [a] Temporary Restraining Order is denied.

2. That the matter is referred to arbitration for proceedings consistent with the agreement.

3. That this matter is continued until the conclusion of the arbitration and the matter set for status October 15."

At plaintiff's insistence, the order further provided:

"4. That plaintiff's complaint is dismissed and Plaintiff's [sic] make no request to file an amended complaint."

Plaintiff, pursuant to Supreme Court Rule 307 (107 Ill. 2d R. 307), appealed to this court only that portion of Judge Wosik's August 17 order denying its request for a temporary restraining order. (*Best Coin-Op, Inc. v. Old Willow Falls Condominium Association* (1983), 120 Ill. App. 3d 830, 458 N.E.2d 998 (hereinafter *Coin-Op I*).) Old Willow Falls filed a petition to dismiss the appeal, arguing, *inter alia*, that the dismissal of plaintiff's complaint operated as a final judgment on the merits and that there was no longer an underlying complaint on which the motion for a preliminary injunction was based and from which an interlocutory appeal could be taken. The motion to dismiss the appeal was taken with the case.

Plaintiff argued that the trial court's denial of preliminary injunctive relief was based on an erroneous interpretation of the contract as precluding a preliminary injunction pending arbitration. Paragraph 13 of the agreement between Best Coin and Loch Lomond Apartments provided:

"In the event of any dispute or controversy arising out of the operation or alleged breach of this Lease Agreement, such dispute or controversy shall be submitted to and be governed by the rules of the American Arbitration Association, and the decision rendered thereunder, whether legal or equitable in nature, shall be final and binding upon the parties. No litigation shall be instituted between the parties hereto except to enforce the award or the order of the arbitrators."

Paragraph 10 of the agreement in pertinent part provided:

"In the event of a breach of this lease *** (including *** the unauthorized disconnection of Lessee's laundry equipment ***) the parties *** agree that at the option of the Lessee, either (a) Lessor shall pay to Lessee [liquidated damages] *** or (b) Lessor consents to the entry of a temporary or permanent injunction to restrain any violation of this agreement ***."

Plaintiff maintained that paragraph 10 gave it a right to a temporary restraining order to maintain the status quo until a decision of the arbitrators. Ilg, also a party to the appeal, filed a separate brief in which it argued that (1) the denial of the temporary restraining order was not erroneous because the contract provided for arbitration as the exclusive remedy for disputes arising therefrom and (2) Best Coin did not meet the legal requirements for a preliminary injunction, including a showing of irreparable injury and of an inadequate remedy at law. *Inter alia*, Ilg maintained that plaintiff's loss of profits could be easily measured on the basis of either the liquidated damages clause of the contract or past intake from the machines, should the arbitrator determine that Old Willow Falls was in breach, and that an arbitrator's award of money damages would be enforceable by court order.

In *Coin-Op I*, this court found it unnecessary to resolve the apparent contradiction between the two contractual provisions in order to dispose of the question before it on interlocutory appeal, *i.e.*, whether the trial court had erroneously denied plaintiff temporary injunctive relief. We found that Best Coin had failed to establish its entitlement to a preliminary injunction because it had an adequate remedy at law. Holding that the trial court did not err in denying plaintiff's petition, we stated:

"Here, should plaintiff ultimately prevail on the merits, any monetary loss which it suffers in the brief period pending the final determination of the arbitrators can be calculated with a great deal of certainty. *** [P]laintiff's losses can easily be calculated by reference to Ilg's gross receipts during the period in question. *** Therefore, since the sole harm plaintiff will sustain in the absence of a preliminary injunction is the loss of profits, and its remedy at law for that injury is completely adequate, it is our view that the trial court did not abuse its discretion in denying *** preliminary injunctive relief." (*Best Coin-Op, Inc. v. Old Willow Falls Condominium Association*, 120 Ill. App. 3d at 835.)

We also noted that the only issue before us was whether a temporary injunction was warranted, and that we found it unnecessary to speculate as to whether money damages were adequate for any future harm plaintiff would suffer and whether money damages or a permanent injunction

would be the appropriate relief in the event the arbitrators decided in plaintiff's favor. (*Best Coin-Op, Inc. v. Old Willow Falls Condominium Association*, 120 Ill. App. 3d at 835.) Finally, we stated that Old Willow Falls' motion to dismiss the appeal was denied. 120 Ill. App. 3d at 836.

Plaintiff never appealed the portion of the August 17, 1983, order dismissing its complaint, and having opted to stand on its complaint, never attempted to amend it. Nor did it move to vacate any portion of the order. However, while the above appeal (*Coin-Op I*) was pending, plaintiff on September 2, 1983, filed a complaint against Ilg in the circuit court of Cook County, law division, for tortious interference with contract. The complaint alleged that Ilg, knowing of the contractual relationship between plaintiff and Old Willow Falls, contacted Old Willow Falls "for the purpose of inducing [the] Association to breach plaintiff's lease and enter into a lease with Ilg." It further alleged that as a result of certain inducements offered by Ilg to Old Willow Falls, including more favorable renewal terms and a higher percentage of gross receipts paid to the lessor, Old Willow Falls breached its lease with plaintiff and entered into a new lease with Ilg. Plaintiff requested $202,356 in compensatory damages, based on the "12 years remaining" on the lease at the time of the alleged breach, and $100,000 in punitive damages.

Ilg filed a motion to dismiss plaintiff's complaint on the ground that the claim was barred by *res judicata*. In support of its motion, defendant argued that as intervenor in the chancery action, it had been a full party to that litigation. Plaintiff's entire complaint had been dismissed, and the order of dismissal recited plaintiff's waiver of an opportunity to amend his complaint, although plaintiff could have chosen to amend it to add claims against Ilg. Therefore, Ilg maintained, the order of August 17, 1983, operated as a *res judicata* bar to the second lawsuit. On February 29, 1984, Judge Lester D. Foreman issued the following order:

> "This cause coming on to be heard on Defendant's Motion to Dismiss Plaintiff's Complaint upon the doctrine of *res judicata*. The Court hearing arguments, reading the pleadings and being fully advised in the premises:
> IT IS HEREBY ORDERED
> 1. That Defendant's Motion to Dismiss is denied.
> 2. That Defendant shall Answer or Otherwise Plead to the Complaint Within 28 days."

During the same six-month period following Judge Wosik's order, plaintiff also attempted to seek arbitration of its dispute with Old Willow Falls. On September 1, 1983, it filed a demand for arbitration with the American Arbitration Association. Old Willow Falls raised written objections to this demand, arguing that (1) it was not a party to the

contract between plaintiff and Loch Lomond Apartments, and that those who are not signatories to an arbitration agreement cannot be compelled to participate in arbitration proceedings; (2) it was not a successor in interest to Loch Lomond Apartments for purposes of the lease; (3) plaintiff had waived its right to arbitration by proceeding first in State court, in contravention of the relevant contractual clause; and (4) by appealing the trial court's order "preliminarily disposing of the issues" in the chancery case, plaintiff had divested the trial court of jurisdiction and placed the issue before the appellate court, thereby waiving "any rights it may have had to submit the issues to arbitration." The American Arbitration Association, apparently unpersuaded by any of these objections, decided to proceed with the case. On March 2, 1984, it notified the parties that it would "continue to administer this case unless the arbitration proceedings are stayed by court order." It then scheduled a hearing before the arbitrators for April 23 and April 24, 1984.

On April 16, 1984, Old Willow Falls filed a motion before Judge Wosik to permanently stay the arbitration proceedings, arguing that the judge's previous order, dismissing plaintiff's complaint with prejudice, operated as a final adjudication of its dispute with Best Coin. After reviewing the briefs of the parties, Judge Wosik presided at a hearing on the motion to stay arbitration on June 12, 1984, at which the following colloquy occurred:

"MR. STONE [Counsel for plaintiff]: [Judge Foreman] heard lengthy arguments, and it was his conclusion *** that that Order [of August 17, 1983] did not operate an [sic] an involuntary dismissal on the merits of the case. To do so would deprive Plaintiff of his day in court. When this Order was entered—

THE COURT: You can file a new lawsuit. You can file a new lawsuit. What do you mean it's depriving you of your day in court? You are convenienced [sic], I admit.

MR. STONE: No, Sir, Your Honor. This is a res judicata case which prevents any other lawsuits from ever being filed arising out of the same facts.

THE COURT: Whatever he wants to do, I don't know, but some other Judge will have to take that up. I am only concerned with the case before me. *** I am sustaining [Counsel for defendant]'s motion."

The court then entered the following order:

"This matter coming on to be heard on the Motion of Defendant Old Willow Falls Condo Assoc. to permanently stay arbitration proceedings requested by Plaintiff based upon the issues that

there has been a final adjudication on the merits against Plaintiff pursuant to Rule 273 and the matter having been briefed and full[y] argued and the court being fully advised IT IS HEREBY ORDERED:

1. That the order of dismissal entered August 17, 1983, against plaintiff is a final adjudication on the merits pursuant to Supreme Court Rule 273 with regard to the issues;

2. That the arbitration hearings requested by plaintiff at the American Arbitration Association are permanently stayed, there being no basis to proceed in view of the court order."

Plaintiff appealed the June 12, 1984, order to this court, contending that the trial court erred in stating that its August 17, 1983, order was a final adjudication on the merits. (*Best Coin-Op, Inc. v. Old Willow Falls Condominium Association* (1987), 158 Ill. App. 3d 492, 511 N.E.2d 649 (hereinafter *Coin-Op II*).) We held that the trial court had not so erred. Nor had it erred by permanently staying arbitration proceedings. As we observed in *Coin-Op II*, Supreme Court Rule 273 (107 Ill. 2d R. 273) clearly provides that unless an order of dismissal specifies otherwise, an involuntary dismissal other than for lack of jurisdiction, improper venue, or failure to join an indispensable party is deemed an adjudication on the merits. As the dismissal of plaintiff's chancery action did not fall into any of these three categories, we saw no reason why this rule should not apply. (*Best Coin-Op, Inc. v. Old Willow Falls Condominium Association* (1987), 158 Ill. App. 3d 492, 494, 511 N.E.2d 649, 651.) We further stated:

"The record shows that the trial court intended its order to be a final adjudication on the merits.

A dismissal with prejudice is an adjudication on the merits [citation] and is deemed to be as conclusive of the rights of the parties as if the matter had proceeded to trial and had been resolved by a final judgment against the plaintiff [citation]. Also, the doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and, as to them, constitutes an absolute bar to a subsequent action involving the same claim." 158 Ill. App. 3d at 496.

Our decision in *Coin-Op II* was filed May 8, 1987. Proceedings in plaintiff's action at law had been continued for the duration of the appeal from the chancery case, and during consideration of a motion for rehearing, which was denied. In the interim, in January 1986, Ilg filed a motion with the trial court to consolidate the law case with the chancery case, making the following allegations in support of this motion: (1) Best

Coin is the plaintiff in both cases; (2) both cases are related to the same property and involve the same dispute, namely, who has the right to operate certain laundry room facilities; (3) both cases involve the same parties, documents, and alleged behavior, and "[t]he judge in each case will have to construe the same documents and examine substantially the same conduct of the parties." No further action was ever taken on defendant's motion to consolidate, nor was any action taken on a motion to transfer the case to the chancery division for a ruling on that motion, filed by defendant on April 28, 1986, apparently because of the pending appeal.

On May 19, 1987, defendant filed a second motion to dismiss plaintiff's entire complaint on *res judicata* grounds, relying on this court's opinion in *Coin-Op II*. Defendant argued that as an intervening defendant in the chancery action, it was entitled to the full benefits of the final adjudication on the merits rendered in that case. In response, plaintiff maintained that its action for tortious interference with contract was a separate and distinct cause of action and that, consequently, the dismissal of its action for equitable relief had no *res judicata* effect on the case at bar. Moreover, to deny it an opportunity to pursue a remedy at law would result in a situation where it was wronged without a remedy. Following substitution of attorneys for the plaintiff, the case was reassigned to Judge Edwin M. Berman, who heard arguments on defendant's motion on January 26, 1988. After reviewing the procedural history of the case, Judge Berman concluded that he could not find, based on this court's opinion in *Coin-Op II*, that a final adjudication on the merits in plaintiff's case against Old Willow Falls, for equitable relief, necessarily operated as a *res judicata* bar to plaintiff's separately filed tortious interference claim against Ilg, for money damages. Judge Berman further stated that he believed this question, not having been specifically addressed in *Coin-Op II*, should be referred to this court for disposition. He then denied defendant's motion to dismiss plaintiff's complaint in an order that was made final and appealable. From that order, defendant now appeals.

OPINION

Initially, we begin by reaffirming our holdings in *Coin-Op I* and *Coin-Op II*. First, the trial court in the chancery case was correct in denying plaintiff temporary injunctive relief because an adequate remedy at law existed for any interruption in plaintiff's possession of the premises pending final resolution of the underlying issue, namely, whether plaintiff was entitled to possession by virtue of an enforceable contractual right against Old Willow Falls. Secondly, the involuntary dis-

missal of plaintiff's complaint in the same case operated as a final adjudication on the merits, pursuant to Supreme Court Rule 273 (107 Ill. 2d R. 273). It is well established that a prior judgment in one case may have preclusive effects in a subsequent action under both of the related but distinct doctrines known as *res judicata* and collateral estoppel. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251, 461 N.E.2d 959, 961.) In *Coin-Op II*, an appeal from plaintiff's chancery action, the specific question of what preclusive effect, if any, a final judgment in that case would have upon plaintiff's separately filed action against Ilg was not before this court. Furthermore, there was no need to address that question in order to determine that the involuntary dismissal of plaintiff's first lawsuit was a final adjudication on the merits of that case and that a permanent stay of the arbitration proceedings was therefore proper. In this opinion we will consider, in light of our earlier decisions, other relevant case law, and the unusual facts and circumstances surrounding the extended litigation between the parties, the question of whether the case now before us is a "subsequent action involving the same claim" to which the final judgment in the prior case constitutes an absolute *res judicata* bar. We will also consider whether the corollary doctrine of collateral estoppel may operate to preclude plaintiff's claim.

Defendant first contends that the doctrine of *res judicata* bars plaintiff's complaint at law because there is an identity of both parties and claims in the two lawsuits, as required for the doctrine to apply. Defendant maintains that plaintiff's claims for specific performance of a contract and for injunctive relief, in the first action, and its claim for tortious interference with the same contract, in the second suit, are simply different theories of recovery grounded in a common core of operative facts relating to the termination of plaintiff's possession of a laundry room. Thus, Ilg argues, the two lawsuits actually involve the same claim or cause of action for *res judicata* purposes, and accordingly, plaintiff's tort action must be barred.

■■ ■ The doctrine of *res judicata*, also known as "estoppel by judgment," provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251, 461 N.E.2d 959, 961-62.) The doctrine is not limited, where the cause of action and the parties are the same, to those matters which were actually litigated and resolved in a prior suit (*Baird & Warner, Inc. v. Addison Industrial Park, Inc.* (1979), 70 Ill. App. 3d 59, 65, 387 N.E.2d 831, 838), but also extends to any matters which might have been raised in

that suit to sustain or defeat the claim or demand. (*Housing Authority v. YMCA*, 101 Ill. 2d at 251-52, 461 N.E.2d at 962.) In other words, the bar extends not only to what has actually been determined in the former proceedings, but also to any other matters properly involved by the subject matter which could have been raised and determined. (*Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 154, 421 N.E.2d 278, 282.) Furthermore, where the estoppel applies, it operates without regard for whether the prior adjudication was correct or erroneous. *Morris v. Union Oil Co.*, 96 Ill. App. 3d at 154, 421 N.E.2d at 282.

▉▉ ▉ The doctrine of *res judicata* is founded upon the important public policy principles of judicial economy and consistency (*Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 154, 421 N.E.2d 278, 283), and upon the equity of preventing harassment of a defendant by a multiplicity of lawsuits (*Baird & Warner, Inc. v. Addison Industrial Park, Inc.* (1979), 70 Ill. App. 3d 59, 64, 387 N.E.2d 831, 837). However, it is axiomatic that where either *res judicata* or collateral estoppel is raised as a bar to an action, the burden of establishing its applicability is on the party relying on it. (*Patzner v. Baise* (1986), 144 Ill. App. 3d 42, 44, 494 N.E.2d 178, 180; *Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 525, 395 N.E.2d 1143, 1149.) The party raising either defense must show with clarity and certainty the parties, the precise issues, and the judgment of the former action. (*Kedzierski v. Kedzierski* (1967), 86 Ill. App. 2d 264, 268, 229 N.E.2d 919, 921.) Moreover, equity dictates that the doctrine of *res judicata* will not be applied technically so as to create inequitable and unjust results. (*Benton v. Smith* (1987), 157 Ill. App. 3d 847, 856, 510 N.E.2d 952, 957-58; *Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 524, 395 N.E.2d 1143, 1148-49.) The doctrine should only be applied as fairness and justice require, and only to facts and conditions as they existed when the judgment was entered. *Rotogravure Service, Inc. v. R.W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 526, 395 N.E.2d 1143, 1149.

▉▉▉ The essential elements of *res judicata* are (1) an identity of parties or their privies in the two suits; (2) an identity of causes of action in the earlier and the later suit; and (3) a final judgment on the merits in the earlier suit. (*Pfeiffer v. William Wrigley Jr. Co.* (1985), 139 Ill. App. 3d 320, 322, 484 N.E.2d 1187, 1189; *Torres v. Rebarchak* (7th Cir. 1987), 814 F.2d 1219, 1222.) Our opinion in *Coin-Op II* established with certainty that the involuntary dismissal of plaintiff's complaint in the chancery action, expressing plaintiff's desire to stand on its complaint and not to plead over, and neither appealed nor vacated, was a final judgment on the merits by a court of competent jurisdiction. There is also an identity of parties in both suits. Defendant Ilg, although

an intervenor in the first suit, filed only against Old Willow Falls, was a full party to that litigation on the opposite side of the case from plaintiff. It filed motions, submitted supporting memoranda, and argued the merits of its motion to dismiss directly against plaintiff in court hearings. The law in Illinois is that an intervenor has all the rights of an original party. (Ill. Rev. Stat. 1987, ch. 110, par. 2—408(f); *In re Marriage of Johnson* (1981), 97 Ill. App. 3d 634, 635, 423 N.E.2d 264, 265.) If the second lawsuit is barred by *res judicata*, Ilg is entitled to the full benefits of that bar. Therefore, the key question for this court to determine is whether the third essential element of *res judicata* has been met; namely, whether the first and second suits involve the same claim or cause of action.

Initially, we observe that there is no question that plaintiff could have amended its original chancery complaint to include a claim against Old Willow Falls for money damages for breach of contract. Likewise, once Ilg had intervened in the suit, plaintiff could have filed a claim against Ilg for tortious interference with that contract within the context of the original litigation. Our circuit courts have "original jurisdiction of all justiciable matters" (Ill. Const. 1970, art. VI, §9), and the presence or absence of a justiciable matter determines jurisdiction, not the presence or absence of an adequate remedy at law. Therefore, all of these claims properly could have been brought in, and heard by, the chancery court, which was also a court of competent jurisdiction for *res judicata* purposes. Thus, the issue is not whether plaintiff could have pursued a recovery in tort against Ilg in conjunction with its former suit; rather, the issue before this court is whether Best Coin's failure to take such action resulted in a *res judicata* bar to its later, separately filed, complaint. The answer primarily depends upon whether the tortious interference claim represents substantially the same claim or cause of action as was litigated in the first suit, despite the different theory of recovery alleged and the money damages demanded.

■■ ■ A prior judgment operates as *res judicata* of subsequent claims where the facts and relief sought are essentially, or substantially, the same. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 254, 461 N.E.2d 959, 963; *Benton v. Smith* (1987), 157 Ill. App. 3d 847, 856, 510 N.E.2d 952, 956.) Illinois courts have used various standards for determining whether there is identity of causes of action. It has often been stated that a cause of action consists of a right belonging to the plaintiff and a violation of that right by a wrongful act or omission by the defendant for which the law gives a remedy. (*Benton v. Smith* (1987), 157 Ill. App. 3d 847, 854, 510 N.E.2d 952, 956; *Pfeiffer v. William Wrigley Jr. Co.* (1985), 139 Ill. App. 3d 320, 322, 484 N.E.2d

1187, 1189; *Village of Northbrook v. County of Cook* (1980), 88 Ill. App. 3d 745, 750, 410 N.E.2d 925, 929.) To determine whether causes of action are the same for *res judicata* purposes, two tests have been employed. (*Benton v. Smith* (1987), 157 Ill. App. 3d 847, 854, 510 N.E.2d 952, 956.) The first is a "same evidence" test, under which the court inquires whether the same facts are essential to the maintenance of both cases or whether the evidence needed to sustain the second action would have sustained the first. (*Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 157, 421 N.E.2d 278, 285; *Village of Northbrook v. County of Cook* (1980), 88 Ill. App. 3d 745, 750, 410 N.E.2d 925, 929.) Where the same factual allegations form the basis for the two allegedly different causes of action, the fact that a party proceeds on different theories or seeks different relief does not prevent the operation of *res judicata*. (*Barth v. Reagan* (1986), 146 Ill. App. 3d 1058, 1066, 497 N.E.2d 519, 524.) Therefore, in determining whether the prior judgment in the chancery case bars plaintiff's action here, it is necessary to compare the nature, purpose, and allegations of the present cause of action with the earlier proceedings (*Raymond Construction Co. v. Midwest America Development, Inc.* (1978), 67 Ill. App. 3d 332, 335, 384 N.E.2d 907, 908), while keeping in mind that two causes of action are not necessarily the same merely because they arise out of the same set of facts and that mere similarity in pleadings does not determine the issue of *res judicata* or collateral estoppel (*Benton v. Smith* (1987), 157 Ill. App. 3d 847, 855, 510 N.E.2d 952, 957).

Plaintiff's complaint in the first suit was solely against Old Willow Falls. The right allegedly belonging to plaintiff was exclusive possession of a laundry room, a right based upon a written agreement which plaintiff characterized as a lease. Plaintiff and Loch Lomond Apartments, predecessor in interest to Old Willow Falls, were the sole parties to that agreement. The complaint alleged a violation of plaintiff's possessory rights under the contract by specific wrongful acts of Old Willow Falls. These included notification by Old Willow Falls that the contract was terminated by operation of law and the subsequent unlawful disconnection of the machines. The legal issues involved were: (1) whether Old Willow Falls had violated plaintiff's possessory rights to the laundry room; (2) whether the agreement itself provided for entry of a temporary or permanent injunction to restrain the lessor from violations of the agreement, including disconnection of plaintiff's machines, or conversely, whether any dispute between parties to the agreement must first be submitted to arbitration; (3) whether plaintiff's legal remedies were inadequate; and (4) whether plaintiff would suffer irreparable injury if injunctive relief were not granted. While the nature and enforce-

ability of the agreement were necessarily considered by the court in determining these issues, neither Ilg's conduct in securing a separate lease, nor Old Willow Falls' conduct in executing that lease was mentioned in plaintiff's complaint. Nor were Ilg's conduct or its lease addressed at any time during the chancery proceedings.

Examining the allegations of plaintiff's complaint at law, we find that the first 11, describing the terms of its lease, the factual background of the condominium conversion, and its eviction from the property, essentially mirror the allegations of the chancery complaint against Old Willow Falls. However, allegations 12 through 21 focus on specific revenue, renewal and other provisions of the two agreements as a basis of comparison. They further state that Ilg, knowing of the ongoing contractual relationship between plaintiff and Old Willow Falls, contacted Old Willow Falls with the intention of offering these more favorable terms to the lessor in order to induce it to breach plaintiff's lease. For Ilg's intentional, wilful and knowing inducement of the lessor, and for its intentional interference with plaintiff's ongoing contractual relationship, continuing, at plaintiff's option, until 1995, Best Coin demands both compensatory and punitive money damages. In order to obtain the relief sought under the theory advanced in this complaint, plaintiff would need to establish: (1) that the original agreement was a valid contract granting plaintiff certain rights enforceable against Old Willow Falls; (2) that Ilg had knowledge of the existing contract at the time he induced Old Willow Falls to breach it; (3) that Ilg intentionally and maliciously induced the breach; (4) that the subsequent breach was due to Ilg's wrongful conduct; and (5) that money damages resulted from the breach. See *Candalus Chicago, Inc. v. Evans Mills Supply Co.* (1977), 51 Ill. App. 3d 38, 47, 366 N.E.2d 319, 326.

■ While it is obvious that certain evidence as to the nature and enforceability of plaintiff's contract would be required to support either plaintiff's chancery complaint or his complaint for tortious interference against Ilg, we cannot say, generally, that the evidence necessary to sustain the first complaint would sustain the second, or vice versa. This conclusion is supported by the court's analysis in *Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 376, 444 N.E.2d 205, 208. The issue in *Redfern* was whether, under the "same evidence" test, the dismissal with prejudice of two counts of plaintiff's complaint, for injunctive relief to restrain his lessor from taking possession of certain farmland or otherwise breaching an oral lease, operated as a *res judicata* bar to two other counts against the same defendant, seeking money damages for breach of that lease. Concluding that the same evidence would not sustain verdicts for both injunctive relief and money damages, and

that, therefore, the causes of action were not identical, the court stated:

> "In order to obtain a favorable verdict on [the injunctive relief] counts, plaintiff would have to show: that his possessory rights were violated; that his legal remedies were inadequate; and that he will suffer irreparable injury if injunctive relief is not granted. [Citation.] In order to obtain damages under the theory advanced in his 'second amended complaint,' plaintiff would need to show: that he had a contractual right to farm the land; that defendants breached the contract; and that plaintiff suffered damages as a result of the breach." *Redfern v. Sullivan*, 111 Ill. App. 3d at 376.

In *Redfern*, the plaintiff sued defendants for money damages for breach of a lease after the court had dismissed his claim for equitable relief against the same defendants, based on the same occurrence, having heard arguments that plaintiff had failed to allege an inadequate remedy at law or irreparable harm and that the complaint had failed to establish the existence of a landlord-tenant relationship between the parties. In the instant case, where plaintiff is suing a different defendant for money damages, based solely upon that defendant's tortious conduct in inducing the first defendant to breach a lease, the facts even more strongly support the conclusion that the two causes of action are not identical, as measured by the "same evidence" test. Where, as here, the two suits are grounded upon different duties owed to plaintiff by different defendants, the relief requested is entirely different, and the same evidence would not sustain both claims, despite the involvement of the same property and contract in both, we cannot say, as courts in some cases have held, that all that has been substituted in the second suit is a different theory of recovery. See, *e.g.*, *Neuberg v. Michael Reese Hospital & Medical Center* (1983), 118 Ill. App. 3d 93, 99, 454 N.E.2d 684, 689 (same duties owed to plaintiff by same defendants and same evidence would sustain both claims); *Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 157, 421 N.E.2d 278, 285 (both suits based upon same instruments of title, same agreements, and same acts of defendants).

Illinois courts have also used a "transactional" approach to determine whether causes of action are identical for *res judicata* purposes, stating that "the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give rise to the assertion of relief." (*Baird & Warner, Inc. v. Addison Industrial Park, Inc.* (1979), 70 Ill. App. 3d 59, 64, 387 N.E.2d 831, 839; *Radosta v. Chrysler Corp.* (1982), 110 Ill. App. 3d

1066, 1069, 443 N.E.2d 670, 673.) It is clear that both lawsuits filed by plaintiff arose out of one underlying contractual relationship. However, whether Old Willow Falls' disconnection of the machines and eviction of plaintiff, and Ilg's earlier conduct in allegedly approaching Old Willow Falls for the purpose of inducing it to breach plaintiff's existing agreement, constitute a single group of operative facts, or a "transaction," for *res judicata* purposes, is a more difficult question to resolve. In making this determination, several cases involving tortious interference claims under somewhat similar facts are instructive.

In *Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 359 N.E.2d 171, plaintiffs brought an action against defendants for malicious interference with their contracts with a corporation. The corporation had undergone dissolution, and one of the plaintiffs had sued, in an earlier action, the corporation's assignee for the benefit of creditors, claiming money due on a promissory note held by plaintiff. The claim on the note was settled for part of its value, and the suit was then dismissed by consent of the parties. In the second suit, the plaintiff alleged that her loss of part value of the promissory note was the result of defendant's fraudulent acts in maliciously causing the debtor corporation's dissolution to avoid paying both plaintiffs the amounts due under their various contracts. This court held that the second suit was a distinct cause of action from the first and was not barred by the prior release and judgment. In reversing the trial court's dismissal of the tort action, we stated:

"[I]n the case at bar, although no action can now be maintained against either [the corporation] or its assignees because of the release and prior judgment, Mrs. Johnson may proceed in tort against those individuals who allegedly conspired to cause the wrongful dissolution of [the corporation] which precipitated her loss." (*Johnson v. Nationwide Business Forms, Inc.*, 41 Ill. App. 3d at 130, 359 N.E.2d at 173.)

Similarly, in *W.P. Iverson & Co. v. Dunham Manufacturing Co.* (1958), 18 Ill. App. 2d 404, 152 N.E.2d 615, this court held that a tort action charging defendants with malicious interference with contract by wrongfully conspiring to dissolve a corporation was a valid cause of action despite the fact that plaintiff may not have been able to bring an action against the corporation for breach of contract. *Iverson*, 18 Ill. App. 2d at 417.

Other tortious interference cases not involving corporate dissolution are even closer in factual context to the case at bar. For example, in *Chas. Todd Uniform Rental Service Co. v. Klysce* (1961), 30 Ill. App. 2d 274, 174 N.E.2d 570, the plaintiff had earlier brought suit against both

its former employee and Klysce, his new employer, in order to enjoin them from competing and soliciting customers in the same sales territory for a period of time, as expressly covenanted in the former employee's contract. That suit was dismissed without specific findings on defendant's motion, which had alleged that the covenant was against public policy and therefore invalid, and that plaintiff had not come into equity with "clean hands." Plaintiff never appealed that final order. Later, plaintiff brought an action at law in another Illinois county against the new employer (Klysce) only, alleging that defendant had induced the employee to leave his job and to work for defendant. The tort complaint sought compensatory and punitive money damages. Defendant filed a motion to dismiss, alleging that the dismissal of the first suit was a *res judicata* bar to the second, because the issue of tort damages against Klysce could and should have been raised in the first action, for injunctive relief. The trial court granted the motion and the appellate court reversed, stating that the causes of action were different and that joinder of different causes of action was permissive, not mandatory. Additionally, the court cited the then-existing distinction between law and equity jurisdiction in Illinois, a factor which is no longer applicable to our determination. *Chas. Todd Uniform,* 30 Ill. App. 2d at 279-80, 174 N.E.2d at 573.

One year before *Chas. Todd Uniform,* this court decided the case of *Howard T. Fisher & Associates, Inc. v. Shinner Realty Co.* (1960), 24 Ill. App. 2d 216, 164 N.E.2d 266, in which we upheld the dismissal of plaintiff's claim for tortious interference with contract as barred by *res judicata.* In *Fisher,* the plaintiff had first filed an action against Lincoln Village Shopping Center, Inc. (predecessor of Shinner Realty), and against Ernest G. Shinner, individually, to foreclose a mechanic's lien upon certain Chicago real estate. The court entered a final order dismissing that suit, which was upheld on appeal. Eight years later, plaintiff filed a complaint against both the Realty Company and Shinner for money damages for breach of the building construction contract upon which the mechanic's lien allegedly was based (count I), and against Shinner only for tortiously inducing Shinner Realty to breach the contract (count II). We concluded that both the breach of contract count and the tortious interference count were barred by the final adjudication in the first suit, and that the tort count was barred, in any case, by the applicable five-year statute of limitations. (*Fisher,* 24 Ill. App. 2d at 225, 164 N.E.2d at 271-72.) However, *Fisher* can be distinguished from the case at bar, not only because of the additional statute of limitations factor, but also because the conduct of the same individual defendant, Ernest Shinner, was at issue in both suits. Here, Ilg was

in no sense connected with or an agent of Old Willow Falls at the time of the breach, but rather was an unrelated business entity whose allegedly tortious conduct precipitated plaintiff's loss by separate and distinct acts of Old Willow Falls. Moreover, Ilg's conduct, unlike that of Ernest Shinner, was not at issue in the prior suit against Old Willow Falls. In our opinion, the few Illinois cases dealing specifically with tortious interference claims in the context of separately filed contract claims lend support to the conclusion that generally, a single group of operative facts does not give rise to the assertion of relief in both suits, under the "transactional" approach. Employing this test, we would be inclined to characterize plaintiff's tort claim as a separate and distinct cause of action.

In addition to *res judicata* principles, analyzed by means of the "same evidence" or "transactional" approaches, Illinois courts adhere, as a matter of public policy, to a general rule against the splitting of claims or causes of action. Under the rule against claim-splitting, closely related to the doctrine of *res judicata*, a plaintiff is not permitted to sue for part of a claim in one action and then sue for the remainder in another action. (*Torres v. Rebarchark* (7th Cir. 1987), 814 F.2d 1219, 1224; *Radosta v. Chrysler Corp.* (1982), 110 Ill. App. 3d 1066, 1068, 443 N.E.2d 670, 672.) In order that litigation have an end and that no person be unnecessarily harassed with a multiplicity of lawsuits, plaintiffs cannot indulge in piecemeal litigation. (*Radosta v. Chrysler Corp.* (1982), 110 Ill. App. 3d 1066, 1068, 443 N.E.2d 670, 672.) For example, an entire claim arising from a single tort cannot be divided and be the subject of several actions regardless of whether or not the party suing has recovered all he might have recovered. (*Radosta*, 110 Ill. App. 3d at 1069, 443 N.E.2d at 672.) Where a demand or right of action is in its nature entire and indivisible, it cannot be split up into several causes of action and be made the basis of many separate suits. Rather, the law requires that both in law and in equity a plaintiff must present all grounds of recovery he may have. He cannot preserve the right to bring a second action after loss of the first merely by limiting the theories of recovery opened by the pleadings in the first action. *Prochotsky v. Union Central Life Insurance Co.* (1971), 2 Ill. App. 3d 354, 356-57, 276 N.E.2d 388, 390. See, *e.g., Radosta v. Chrysler Corp.* (1982), 110 Ill. App. 3d 1066, 443 N.E.2d 670 (plaintiff's counterclaim in first action, grounded in strict liability and negligence, against manufacturer of his defective truck, involved in collision with third party, and plaintiff's claim in second suit, seeking indemnification for any liability for third party's injuries, were both based on al-

legations that defendant sold him a truck with defective steering which caused the accident, and thus constituted a single cause of action); *Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 421 N.E.2d 278 (second suit by plaintiffs owning surface interest in land and rights to minerals upon termination of defendant's lease, seeking to quiet title, the ejection of defendant, and damages, held barred by *res judicata* effect of first suit, seeking rescission of an agreement between defendant and neighboring mineral interest lessees, consolidating their separate leases, an injunction, and damages); *Sjostrom v. McMurray* (1977), 47 Ill. App. 3d 1040, 362 N.E.2d 744 (action to foreclose a mechanic's lien involved essentially the same cause of action as a prior claim for damages based on the underlying building contract, and thus was barred by involuntary dismissal of the first suit); *Prochotsky v. Union Central Life Insurance Co.* (1971), 2 Ill. App. 3d 354, 276 N.E.2d 388 (plaintiff's suit in equity, to recover commissions allegedly owed him in connection with insurance policy issued by defendant, based on breach of an oral agreement, and seeking an accounting, an injunction, and a declaration of constructive trust, was barred by summary judgment for defendant in prior suit at law, for same commissions, based on breach of insurance industry business practice); *Pratt v. Baker* (1967), 79 Ill. App. 2d 479, 323 N.E.2d 865 (plaintiff, alleging same facts in two suits against executor of estate, but claiming breach of executor's bond in first action and adding claims of fraud and "common law tort" in second, had filed two suits bottomed on the same duties of executor to plaintiff, requiring *res judicata* bar of second suit by dismissal of the first).

As the court noted in *Sjostrom*, an action on the underlying contract and a mechanic's lien suit are concerned with the same matters of contract; therefore, all matters of recovery or defense arising from the contract should be litigated in one proceeding or otherwise be barred. (*Sjostrom v. McMurray*, 47 Ill. App. 3d at 1046, 362 N.E.2d at 748.) Similarly, in the case of *Douglas v. Papierz* (1970), 121 Ill. App. 2d 242, 257 N.E.2d 570, upon which *Sjostrom* relied, this court stated:

> "In the instant matter, plaintiff in his suit to foreclose the mechanic's lien alleged a valid contract and prayed for a money judgment in addition to the lien. In their answer, defendants pleaded, *inter alia*, that the work done by plaintiff was not performed according to specifications, and required correction at their costs. As a result, one of the issues raised by the pleadings and the affidavits was whether plaintiff had faithfully performed

according to the contract, and therefore whether he was entitled to a money judgment. The trial court then allowed defendant's motion for a summary judgment ***. It is clear that not only the mechanic's lien was at issue, but also matters involving the contract. It was the duty of the plaintiff to litigate the issues with respect to that contract in those proceedings, and his failure to do so constitutes a bar to a subsequent action involving the same contract." (*Douglas v. Papierz,* 121 Ill. App. 2d at 247, 257 N.E.2d at 572-73.)

Likewise, in *Howard T. Fisher & Associates, Inc. v. Shinner Realty Co.* (1960), 24 Ill. App. 2d 216, 164 N.E.2d 266, discussed above, this court articulated the same principle in finding that dismissal of plaintiff's earlier mechanic's lien foreclosure action barred a subsequent suit for damages on the underlying contract. We stated that the validity of the contract, and whether plaintiff or defendant had breached it, and other matters had been before the court at the time it was dismissed for want of equity, and that plaintiff had the duty to litigate those matters in the case at the time that judgment was entered, and could not relitigate them in a subsequent suit. *Fisher*, 24 Ill. App. 2d at 224, 164 N.E.2d at 271.

 █ It is clear from the foregoing that there is support in the case law of this State, including decisions of this court, for defendant's contention that plaintiff had a responsibility to litigate all matters relating to its laundry room agreement in the context of the chancery case, where issues of the nature and alleged breach of that contract were presented to the court by plaintiff's pleadings and were argued by all three parties. We observe, however, that in the cases cited above, either the first suit presented claims directly against the same defendant sued in the second action, or the separately filed claims were more closely connected in terms of their similar or identical factual allegations, duties owed, and duties breached than were the actions for injunctive relief against Old Willow Falls and the tortious interference claim against Ilg at issue here. Moreover, even if we were to characterize plaintiff's action at law as running afoul of the general rule against claim-splitting, applied technically, we would nonetheless be required to find that plaintiff's claim is not barred as a result under the particular facts of this case. It has been recognized that the rule against splitting causes of action will be relaxed where there was an omission due to ignorance, mistake, or fraud, or where it would be inequitable to apply the rule. (*Thorleif Larsen & Son, Inc. v. PPG Industries, Inc.* (1988), 177 Ill. App. 3d 656, 662, 532 N.E.2d 423, 427.) Section 26 of the Restatement (Second) of Judgments, relied upon in *Larsen,* lists four ex-

ceptions to the general rule against claim-splitting. The first of these is the situation where the parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein. (Restatement (Second) of Judgments §26 (1982).) Defendant has not expressly agreed that plaintiff would have the right to file a separate action at law in connection with his alleged laundry room lease and its breach. In fact, it has opposed the tortious interference suit with both motions to dismiss and motions to consolidate it with the earlier chancery suit. However, defendant has repeatedly argued, both before the chancery court and before this court in a brief submitted during the appeal from that case in *Coin-Op I*, that plaintiff was not entitled to injunctive relief, and that its equitable claims should be dismissed, because it had an adequate remedy at law for any damages it could establish. Plaintiff, barred from arbitration proceedings against Old Willow Falls by the dismissal of its first suit, is now seeking to establish its entitlement to a legal remedy for the wrong it claims to have suffered. We believe that the exception to the claim-splitting rule for situations where the defendant has, in effect, agreed that the plaintiff may split his claim, may be extended to encompass the procedural history of this case. Furthermore, we believe that, in light of all the facts and circumstances surrounding this litigation, a technical application of the rule so as to bar plaintiff's claim would be inequitable. We therefore decline to do so.

Based on the foregoing analysis, we conclude that defendant has not met his burden of showing that the doctrine of *res judicata* should be applied in this case. First, under either of the tests used by our courts to determine whether there is an identity of claims in both suits, plaintiff's action for tortious interference against defendant is, in our view, a separate cause of action, for reasons already stated. Furthermore, while it may be a close academic question whether the rule against claim-splitting would ordinarily bar such a claim, we conclude that the rule is not applicable under the special circumstances reviewed here. Finally, we note the general principle that the doctrine of *res judicata* will not be applied technically so as to create inequitable and unjust results. While acknowledging that errors of judgment and strategy have been made by plaintiff as well as defendant during the course of this extended litigation, we also believe that there has been substantial confusion caused by neither party. We therefore conclude that considerations of equity, as well as established rules of interpretation, dictate that plaintiff's action at law not be dismissed on *res judicata* grounds.

■■ ■ There remains the question of whether plaintiff's claim is

nonetheless barred by principles of collateral estoppel. The doctrine of collateral estoppel, or estoppel by verdict, bars the relitigation of particular issues, actually decided in another action between the same parties, but on a different claim or demand. (*S & S Automotive v. Checker Taxi Co.* (1988), 166 Ill. App. 3d 6, 8, 520 N.E.2d 929, 930; *Gonyo v. Gonyo* (1973), 9 Ill. App. 3d 672, 674, 292 N.E.2d 591, 592.) Under this doctrine, the second action may be barred where some controlling fact or question material to the determination of both cases has been adjudicated in the former suit by a court of competent jurisdiction. (*Gonyo v. Gonyo*, 9 Ill. App. 3d at 674, 292 N.E.2d at 592.) However, the judgment in the first suit operates as an estoppel only as to the point or question *actually litigated and determined* and not as to other matters which might have been litigated and determined. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d at 252, 461 N.E.2d at 962; *S & S Automotive v. Checker Taxi Co.* (1988), 166 Ill. App. 3d 6, 8, 520 N.E.2d 929, 930.) A judgment is conclusive in a subsequent action between the same parties on any issue actually litigated and determined if its determination was essential to that judgment. (*S & S Automotive v. Checker Taxi Co.*, 66 Ill. App. 3d at 8, 520 N.E.2d at 931.) Moreover, there can be no collateral estoppel unless there was a finding of specific fact in the former judgment or record that is material to both that case and the pending case. (*City of Chicago v. Westphalen* (1981), 93 Ill. App. 3d 1110, 1120, 418 N.E.2d 63, 72.) The party asserting the preclusion bears the heavy burden of showing with clarity and certainty that the identical issue was decided in the prior case. *S & S Automotive v. Checker Taxi Co.* (1988), 166 Ill. App. 3d at 8, 520 N.E.2d at 931; *Benton v. Smith* (1987), 157 Ill. App. 3d 847, 853, 510 N.E.2d 952, 956.

▮ Defendant maintains, correctly, that in order to prove its case for tortious interference with contract, plaintiff will need to establish, *inter alia*, that the original agreement was a valid contract granting it certain rights enforceable against Old Willow Falls and that Old Willow Falls breached that contract, two issues presented and argued to the court in plaintiff's first lawsuit. If defendant can show with clarity and certainty that these issues were actually decided in the prior action, based on a specific finding in the record or in the final order dismissing that case, collateral estoppel will apply. From our examination of the record, and of Judge Wosik's August 17, 1983, order, set out earlier in this opinion, it is evident that defendant cannot meet this burden. The order dismissing the chancery case does not reflect either a finding of specific fact or a determination related to the nature or validity of the contract, or to whether it was breached. Furthermore, both Judge Wosik's statements immediately prior to issuing this order and the text of

the order indicate that these matters were at best undecided in the judge's mind, as he referred the case to arbitration and indicated that he considered this the most appropriate course of action. A determination of these issues was therefore not made, nor would such a determination be essential in order to decide that a temporary restraining order was inappropriate or that the entire case should be dismissed for want of equity, without regard to whether plaintiff might be entitled to damages or other relief in another forum. Accordingly, we find that plaintiff's case is not barred by collateral estoppel.

We therefore hold that Judge Berman's order, denying defendant's motion to dismiss plaintiff's complaint on *res judicata* grounds, was not erroneous. That order is affirmed. In remanding this cause for further proceedings, we recognize that the court, to decide the merits of the claim, will need to determine the nature, validity, and enforceability of the contract on which that claim is based, and may need to construe its terms. The permanent stay of arbitration between plaintiff and Old Willow Falls related to the controversy between those parties, which is now *res judicata*, and remains in effect as a result. That stay does not, however, operate to preclude the court's determination, in this case, as to whether there was a valid contract in force, what rights it created, whether the contract was breached by Old Willow Falls, and whether such breach, if any, was caused by defendant's conduct. The plaintiff is thus afforded an opportunity, assuming an otherwise legally sufficient complaint, for a full and final determination of these issues on their merits. Matters should proceed as expeditiously as possible, in the interest of justice and in view of achieving an end to this extended litigation. This case is remanded to the trial court for proceedings not inconsistent with this opinion.

Order affirmed; remanded with directions.

LORENZ and PINCHAM, JJ., concur.