In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-1749

MAZEN HASAN AGHA, *et al.*,

*Plaintiffs-Appellees*,

*v.*

UBER TECHNOLOGIES, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:23-cv-17182 — **Matthew F. Kennelly**, *Judge*.

ARGUED DECEMBER 10, 2024 — DECIDED AUGUST 26, 2025

Before KIRSCH, LEE, and KOLAR, *Circuit Judges*.

LEE, *Circuit Judge*. Four drivers brought claims against Uber Technologies, Inc., alleging that Uber violated the Fair Labor Standards Act (FLSA) and Illinois wage laws by misclassifying them as independent contractors, rather than employees, and thus failing to pay them the statutorily mandated minimum wage, overtime, and business expenses. In response, Uber asked the district court to compel the drivers to arbitrate their claims under the Federal Arbitration Act

(FAA) and the Illinois Uniform Arbitration Act (IUAA), citing the arbitration provisions contained in their driver agreements. The district court granted Uber's request as to three of the four drivers.

As for the fourth, Ken Zurek, he had filed his own lawsuit against Uber in Illinois state court a year before joining the present case. Like here, Uber asked the state court to compel arbitration, citing the same arbitration provisions in its driver agreements with Zurek. The state court, however, concluded that the arbitration provisions were ineffectual because Zurek had exercised his right to opt out of the applicable arbitration agreement with Uber.

Given the state court's decision, the district court determined that the doctrine of issue preclusion blocked Uber from relitigating the effect of the arbitration agreements on Zurek's claims that arose after his opt-out of the arbitration agreement in the 2022 PAA and denied Uber's motion to compel arbitration as to Zurek. Uber appeals. Because we find the district court's analysis to be sound, we affirm.

## I

### A. Uber's Driver Agreements

Uber operates an app-based platform connecting drivers with customers. An Uber driver must agree to a Platform Access Agreement (PAA) with Uber (or one of its subsidiaries) before providing transportation services through Uber's platform.[1] Each PAA includes an arbitration provision, whereby

---

[1] Uber's wholly-owned subsidiaries facilitate different services, and drivers enter into agreements with subsidiaries depending on the services

the parties agree to arbitrate all disputes between the driver and Uber, with some exceptions not relevant here.

The PAAs, however, also contain an opt-out provision, which permits any driver who does not wish to be subject to mandatory arbitration to opt out (by mail or email) within thirty days of agreeing to the arbitration provision. The crux of this appeal is § 13.8(c) of the PAAs, which appears to narrow the applicability of this opt-out right:

> Any opt out of this Arbitration Provision does not affect the validity of any other arbitration agreement between you and us. If you opt out of this Arbitration Provision and at the time of your receipt of this Agreement you were bound by an existing agreement to arbitrate disputes arising out of or related to your use of our Platform and Driver App, that existing arbitration agreement will remain in full force and effect.

During their time driving for Uber, all four plaintiffs entered into a number of PAAs on various occasions (when, for example, Uber updated the PAA's terms). Zurek entered into a PAA in 2020, 2021, and again in 2022. Zurek did not opt out of the arbitration agreement after agreeing to the 2020 PAA,

---

they wish to provide and the online platforms they would like to access. Peer-to-peer transportation drivers enter into PAAs with Raiser, LLC; food delivery drivers enter into PAAs with Portier, LLC; and item delivery drivers enter into PAAs with Schleuder, LLC. The relevant provisions of the PAAs of Uber and its subsidiaries appear to be materially indistinguishable, and because neither side has argued the distinctions matter, we rely on the contractual language from Raiser, LLC's PAA, which is the focus of the parties' arguments.

but he did exercise his opt-out right after entering into the 2021 and 2022 PAAs.

## B. State Court Action

Before joining this action, Zurek had filed suit against Uber in Illinois state court. There, he alleged that, in 2023, Uber had violated a provision of the Chicago Municipal Code by terminating his access to the Uber Driver App after a background check had revealed prior arrests. Zurek asked the state court to grant temporary and preliminary injunctive relief requiring Uber to allow him to use the App and barring Uber from considering his prior arrests in deciding whether he could access the App.

Uber filed a motion asking the court to dismiss the case or, alternatively, to compel arbitration. According to Uber, even though Zurek's dispute with Uber arose after the execution of Zurek's 2022 PAA, § 13.8(c) makes clear that the arbitration provision from his 2020 PAA still applied to his claim despite his opt-out under the 2022 agreement.

The state court rejected Uber's argument, reasoning that Uber's interpretation of § 13.8(c) would nullify Zurek's unambiguous right to opt out of the arbitration provision in the 2022 PAA and render the opt-out provision meaningless. The state court opined that "[t]he only reasonable interpretation of § 13.8(c) is that [Zurek] would still be bound by the arbitration provision of the 2020 PAA for any dispute arising during the effective period of the 2020 PAA, but not for any dispute arising during the effective period of the 2022 PAA." In the court's view, accepting Uber's interpretation would lead to "the absurd result" of binding a driver who opts out of the

2022 arbitration agreement to arbitrate any dispute, even if the dispute arises out of the 2022 PAA.

Zurek and Uber also disputed whether Zurek had in fact received and agreed to the 2020 PAA. But the state court found it unnecessary to decide this issue given that Zurek's claim did not arise when the 2020 PAA was in effect. In any event, the state court noted, Uber had failed to attach any records substantiating its assertion that Zurek had agreed to the 2020 PAA, while Zurek had declared in an affidavit that he had not. Thus, the state court observed, even if the court were to accept Uber's interpretation of the 2022 PAA, dismissal would be unwarranted.

About two months after the state court issued its decision, the parties settled the case, and the lawsuit was dismissed.

## C. District Court Proceedings

The plaintiffs filed the instant lawsuit in 2023, alleging that Uber improperly classified them as independent contractors rather than employees. According to them, employing this misclassification, Uber refused to pay its drivers the mandated minimum wage and overtime rates, thereby violating the FLSA. Moreover, the plaintiffs assert, Uber failed to reimburse drivers for their necessary business expenses, which violated Illinois law.

That is not all, the plaintiffs say. Uber not only misclassified the four of them, but also every other Uber driver in Illinois who was similarly situated to them. Accordingly, on February 10, 2024, the plaintiffs asked the district court to conditionally certify the action so that it could proceed as a collective action under the FLSA. On March 4, 2024, Uber filed its motion to compel arbitration.

In its motion, Uber argued that each plaintiff had entered into at least one arbitration agreement with Uber that was still binding, even if they had opted out of subsequent ones. This was because, Uber asserted, § 13.8(c) provides that opting out of one arbitration agreement does not nullify the prior ones. In response, the four plaintiffs argued that the FAA did not apply to Uber drivers and that the arbitration provisions were unenforceable under Illinois law. Moreover, Zurek offered the additional argument that Uber was bound by the state court's ruling under the doctrine of issue preclusion.

Addressing Zurek, the district court agreed that issue preclusion prohibited Uber from relitigating whether Zurek was bound by his 2020 arbitration agreement despite his election to opt out of the arbitration provision in the 2022 PAA. As for the other plaintiffs, the district court took a fresh look at § 13.8(c) and held that their subsequent opt-outs did not invalidate prior agreements to arbitrate with Uber. Thus, the district court denied Uber's motion as to Zurek but granted it as to the other three drivers. Those drivers do not appeal the order compelling them to arbitrate. Uber, however, asks us to review the district court's denial of its motion as to Zurek.

## II

We review a district court's application of issue preclusion *de novo*. *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 831 (7th Cir. 2013) (citing *Dexia Crédit Loc. v. Rogan,* 629 F.3d 612, 628 (7th Cir. 2010)).

Section 1738 of Title 28 requires federal courts to give state court judgments the same preclusive effect as they would be given under the law of the rendering state. 28 U.S.C. § 1738; *see Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81

(1984); *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) ("Section 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts."); *Sapp v. Foxx*, 106 F.4th 660, 665 (7th Cir. 2024), *cert. denied*, No. 24-379, 2024 WL 4655013 (U.S. Nov. 4, 2024). Thus, we apply Illinois law to determine the preclusive effect of the state court decision.

Under Illinois law, a party asserting issue preclusion must establish that (1) the issue decided in the prior adjudication is identical to the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior adjudication. *Dunlap v. Nestlé USA, Inc.*, 431 F.3d 1015, 1018 (7th Cir. 2005) (citing *Herzog v. Lexington Twp.*, 657 N.E.2d 926, 929–30 (Ill. 1995)). Additionally, the party sought to be bound must have actually litigated the issue in the first suit, and a decision on the issue must have been necessary to the judgment in that case. *Am. Fam. Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000).

Uber's sole argument on appeal is that the issue decided by the state court is not identical to the issue the district court faced here. This is incorrect. The state court decided that Zurek's agreement to arbitrate in 2020 did not apply to a claim that arose during the period governed by the 2022 PAA. Instead, such a claim was governed solely by the 2022 arbitration provision, which was the subject of Zurek's 2022 opt-out. That was the exact issue before the district court.

Despite this, Uber believes that two material differences belie this conclusion. First, Uber points out that the state court expressly declined to address the question of whether Zurek had agreed to the 2020 PAA. Uber sees that question as, at best, undecided, and it cites *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.* for the proposition that issues "at best undecided" cannot support issue preclusion. 545 N.E.2d 481, 496 (Ill. App. Ct. 1989). But that case does not help Uber.

In *Best Coin-Op*, the plaintiff alleged, in part, that the defendant had tortiously interfered with its contract with another entity. *See id.* at 482. The defendant asked the court to dismiss the claim on issue preclusion grounds, arguing that another court had determined that the contract did not exist. *See id.* at 496. The Illinois appellate court disagreed, noting that the existence of the contract as well as its breach—two elements necessary for a tortious interference with contract claim—had not been decided by the prior court. *See id.* By contrast, as the state court in Zurek's case explained, whether Zurek had agreed to the 2020 PAA was "not necessary to address" because the claim before it "did not arise while the 2020 PAA was in effect."

Second, Uber contends that the state court decided the arbitration issue under state law instead of the FAA. Because the district court ignored this distinction, it argues, the court committed reversible error. The problem is that Uber does not explain how the two standards are different, if at all. For example, Uber states that "[t]he FAA applies to questions of formation," but later it appears to concede that those questions are governed by Illinois state law, the precise standard the state court applied here. *See* Br. of Appellant at 32. Thus, the question before the district court was the same question

decided by the state court—that is, did Zurek's arbitration agreement in the 2020 PAA obligate him to arbitrate a claim that arose during the time the 2022 PAA was in effect, even though Zurek had opted out of the 2022 arbitration agreement.

The remaining elements of issue preclusion are uncontested and easily satisfied. On the question of whether the state court decision constitutes a final judgment on the merits, as the district court correctly observed, under Illinois law, issue preclusion may apply to determinations made prior to the entry of a settlement agreement disposing of the underlying litigation. *See Du Page Forklift Serv., Inc. v. Material Handling Servs., Inc.*, 744 N.E.2d 845, 853 (Ill. 2001). The state court order denying Uber's motion to compel arbitration of Zurek's claims fits the bill, and Uber does not argue otherwise.[2] Nor does it argue that it was not a party to the state court action or that it lacked sufficient opportunity to litigate the issue before the state court.

---

[2] Furthermore, Illinois courts may turn to the Restatement (Second) of Judgments, *see, e.g.*, *Du Page Forklift Serv.*, 744 N.E.2d at 849–50, which states that a final judgment, for the purposes of issue preclusion, includes any prior adjudication of an issue that is determined to be "sufficiently firm to be accorded conclusive effect," Restatement (Second) of Judgments § 13 (1982). Relevant factors include whether the parties were fully heard, whether the rendering court supported its decision with a reasoned opinion, and whether the decision was subject to appeal. *See* Restatement (Second) of Judgments § 13; *Haber v. Biomet, Inc.*, 578 F.3d 553, 556 (7th Cir. 2009). In this case, the state court's decision on arbitration was supported by a reasoned opinion, and there is "nothing in the record that indicates that it would revisit the issue at a later time." *Haber*, 578 F.3d at 557.

Before concluding, we acknowledge the superficial inconsistency in enforcing the 2020 arbitration agreement as to the three other plaintiffs but not as to Zurek. But the doctrine of issue preclusion promotes important goals. It "protect[s] litigants from the burden of relitigating an identical issue with the same party" and "promot[es] judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). Uber had an opportunity to litigate this issue before the state court; it lost. It does not get another bite at the apple.

### III

For the foregoing reasons, we AFFIRM the district court's denial of Uber's motion to compel arbitration as to Zurek's claims.[3]

---

[3] Because our ruling on issue preclusion is sufficient to resolve this appeal, we need not explore the many alternative arguments made by the parties.