FIFTH DIVISION
June 23, 2006

No. 1-04-3800

| | | |
|---|---|---|
| RONALD PIAGENTINI and ANNETTE PIAGENTINI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| FORD MOTOR COMPANY, | ) | Honorable |
| | ) | Bill Taylor, |
| Defendant-Appellee. | ) | Judge Presiding. |

MODIFIED UPON DENIAL OF REHEARING

PRESIDING JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiffs, Ronald Piagentini and Annette Piagentini, appeal from an order of the trial court granting defendant, Ford Motor Company's motion for summary judgment based upon *res judicata*. We reverse and remand.

BACKGROUND

Plaintiffs' claims against defendant, Ford Motor Company (Ford), arose from a motor vehicle accident that occurred in Chicago, Illinois. Plaintiff Ronald Piagentini was driving a 1987 Ford Bronco II that collided with another vehicle. Plaintiffs originally filed suit on November 10, 1994, against the alleged driver[1] of the other vehicle claiming that the driver sped through a red light. This case was numbered 94 L 14330 and will be referred to as *Piagentini I*.

---

[1] There were two individuals in the other vehicle and plaintiffs alleged that one of the two was the driver.

On March 2, 1995, plaintiffs amended their complaint to add Ford as a defendant.

Plaintiffs' eight-count amended complaint contained four counts against Ford. Counts I and II were brought by Ronald Piagentini. Count I sounded in strict liability in tort. Count II sounded in negligence. Both counts contained, in subparagraphs a, b, and c, allegations that the Bronco was designed with insufficient stability in swerving maneuvers and was unreasonably susceptible to rolling over. Additionally, both counts contained, in subparagraphs d, e, and f, allegations that the Bronco lacked an adequate seatbelt/occupant protection system. Counts V and VI were brought by Annette Piagentini for loss of society and repeated the theories in counts I and II.

On February 19, 1999, based upon plaintiffs' failure to disclose any expert witness testimony substantiating the allegations of stability and rollover defects, the trial court entered an agreed order for partial summary judgment on the stability and rollover allegations contained in subparagraphs a, b, and c. The trial court dismissed plaintiffs' complaint and granted plaintiffs leave to replead only those claims pertaining to allegations of a defective driver's seatbelt.[2]

---

[2]In its motion for partial summary judgment, Ford had conceded that plaintiffs had disclosed expert witness testimony to substantiate the allegations of a seatbelt defect.

Neither plaintiffs nor Ford requested Rule 304(a) language (155 Ill. 2d R. 304(a)).

On March 19, 1999, plaintiffs filed a second amended complaint and omitted the allegations pertaining to vehicle stability that were the subject of the partial summary judgment. Subsequently, on November 5, 1999, pursuant to section 2-1009 of the Code of Civil Procedure (735 ILCS 5/2-1009)(West 2000), plaintiffs voluntarily dismissed the remaining claims. The trial court granted the motion without prejudice and without costs. At no point in time did plaintiffs appeal the February 19,1999, order granting partial summary judgment.

On October 20, 2000, within one year of the voluntary dismissal, plaintiffs refiled this cause of action. The case was assigned a number of 00 L 12145 and will be referred to as *Piagentini II*. All previous allegations, including those related to the vehicle stability and rollover tendency, as well as its seatbelt/occupant protection system, were included. On January 2, 2001, apparently after realizing this error, plaintiffs filed an amended complaint that did not contain any allegations related to the stability or rollover claims, but instead only contained allegations relating to a defective seatbelt/occupant protection system.

Three and a half years later, on May 13, 2004, which was also three months prior to the trial date, Ford filed a motion for summary judgment in which it invoked the equitable doctrine of *res judicata*. Ford argued that the February 19, 1999, court order granting partial summary judgment in *Piagentini I*, which disposed of only those allegations relating to the stability and rollover claims, operated as a bar to any and all causes of action filed after plaintiffs' voluntary dismissal taken on November 5, 1999. On July 27, after full briefing and argument, the trial court granted Ford's motion for summary judgment. The trial court subsequently denied

plaintiffs' motion for reconsideration on November 29, 2004. This timely appeal followed.

STANDARD OF REVIEW

Our standard of review of a trial court's grant of summary judgment is *de novo. City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n*, 362 Ill. App. 3d 556, 560, 840 N.E.2d 1283, 1287 (2005).

ANALYSIS

Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334, 665 N.E.2d 1199, 1204 (1996). *Res judicata* is an equitable doctrine that is designed to prevent a multiplicity of lawsuits between the same parties where the facts and issues are the same. *Murneigh v. Gainer*, 177 Ill. 2d 287, 299, 685 N.E.2d 1357, 1363 (1997). "*Res judicata* promotes judicial economy by preventing repetitive litigation and [additionally] protects parties from being forced to bear the unjust burden of relitigating essentially the same case." *Arvia v. Madigan*, 209 Ill. 2d 520, 533, 809 N.E.2d 88, 97 (2004). Equity dictates that the doctrine of *res judicata* will not be technically applied if to do so would create inequitable and unjust results. *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d 638, 650, 545 N.E.2d 481, 489 (1989). *Res judicata* should not be applied by this court where it would be fundamentally unfair to do so. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390, 757 N.E.2d 471, 477 (2001). The doctrine should only be applied as fairness and justice require. *Best Coin-Op*, 189 Ill. App. 3d at 650, 545 N.E.2d at

4

1-04-3800

489.

Illinois courts also adhere, as a matter of public policy, to a general rule against the splitting of claims or causes of action. *Best Coin-Op*, 189 Ill. App. 3d at 657, 545 N.E.2d at 493. Under the rule against claim-splitting, where a cause of action is in its nature entire and indivisible, a plaintiff cannot divide it in order to maintain separate lawsuits. *Best Coin-Op*, 189 Ill. App. 3d at 657, 545 N.E.2d at 493. That is, a plaintiff is not permitted to sue for part of a claim in one action and then sue for the remainder in another action. *Rein*, 172 Ill. 2d at 340, 665 N.E.2d at 1206. Rather, the law requires that a plaintiff must assert all the grounds of recovery he may have against the defendant, arising from a single cause of action, in one lawsuit. *Handley v. Unarco Industries, Inc.*, 124 Ill. App. 3d 56, 66, 463 N.E.2d 1011, 1019 (1984); see also *Morris v. Union Oil Co. of California*, 96 Ill. App. 3d 148, 421 N.E.2d 1011 (1981) (a party must set out in his pleadings all of the grounds of recovery he may have). A plaintiff cannot preserve the right to bring a second action after loss of the first merely by limiting the theories of recovery opened by the pleadings in the first action. *Best Coin-Op*, 189 Ill. App. 3d at 657, 545 N.E.2d at 493.

The rule against claim-splitting, which has been described as an aspect of the law of preclusion, is based upon the principle that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of lawsuits. *Rein*, 172 Ill. 2d at 340, 665 N.E.2d at 1207; *Saxon Mortgage, Inc. v. United Financial Mortgage Corp.*, 312 Ill. App. 3d 1098, 1109, 728 N.E.2d 537, 545 (2000). Plaintiffs cannot indulge in piecemeal litigation. *Radosta*, 110 Ill. App. 3d at 1068, 443 N.E.2d at 672.

1-04-3800

In Illinois, even in the instance where a plaintiff initially and properly sets out all of his theories of recovery in one lawsuit, our supreme court has pronounced that a plaintiff engages in claim-splitting where, after an involuntary dismissal of a part of his claim, the plaintiff voluntarily dismisses the entire action for the purpose of appealing that decision and then later attempts to refile a new action. *Rein*, 172 Ill. 2d 325, 665 N.E.2d 1199.  In *Rein*, there were two cases and two sets of appeals.  In the first case (*Rein I*), plaintiffs filed a complaint against a securities dealer and a salesman, alleging that the defendants fraudulently misrepresented the nature of certain securities purchased by the plaintiffs.  The complaint contained counts that sought rescission of the purchase pursuant to section 13 of the Illinois Securities Law of 1953 (Ill. Rev. Stat.1989, ch. 121 ½, par. 137.13) (statutory counts) and other counts seeking common law remedies (common law counts).  The trial court granted defendants' motion to dismiss the statutory counts with prejudice as barred by the applicable statute of limitations (see Ill. Rev. Stat.1989, ch. 121 ½, par. 137.13(D). *Rein*, 172 Ill. 2d at 329, 665 N.E.2d at 1202.  The trial court refused to make a Rule 304(a) finding (155 Ill. 2d R. 304(a)), which would have allowed an immediate appeal. *Rein*, 172 Ill. 2d at 330, 665 N.E.2d at 1202.  Plaintiffs then voluntarily dismissed the remainder of the case, *i.e.*, the common law counts,  *for the purpose of filing an appeal*, under Rule 301 (155 Ill. 2d R. 301), as to the dismissal of the statutory counts. *Rein*, 172 Ill. 2d at 330, 665 N.E.2d at 1202.  The appellate court determined that the statutory counts were barred by the applicable statute of limitations and affirmed the decision of the trial court. *Rein*, 172 Ill. 2d at 330, 665 N.E.2d at 1202.

*After the unsuccessful appeal*, and approximately 19 months after they had voluntarily

6

dismissed the remaining counts of their complaint, plaintiffs refiled the entire case, both the statutory counts and the common law counts (*Rein II*). The complaint was "virtually identical" to the complaint filed in *Rein I*. *Rein*, 172 Ill. 2d at 331, 665 N.E.2d at 1202. The circuit court dismissed both sets of counts based on *res judicata*. The appellate court affirmed, with a strong dissent by Justice Rathje. The Illinois Supreme Court ultimately affirmed.

Although recognizing that the express language of sections 2-1009 and 13-217 of the Code of Civil Procedure (735 ILCS 5/2-1009, 13-217(West 1992)) appeared to give plaintiffs the absolute right to refile voluntarily dismissed common law counts within one year after the voluntary dismissal or within the remaining period of limitations, the Illinois Supreme Court, in *Rein*, pronounced that these sections should not be read to automatically immunize a plaintiff against the bar of *res judicata* when the voluntarily dismissed counts are refiled. *Rein*, 172 Ill. 2d at 342-43, 665 N.E.2d at 1208.

Ford now contends that *Rein* stands for the proposition that once a motion for partial summary judgment is granted, even if a plaintiff does not appeal or further litigate those dismissed claims, he is precluded from voluntarily dismissing the remaining claims under section 2-1009 and later refiling them under section 13-217, because the doctrine of *res judicata* will automatically bar any and all claims that could have been brought in the first action, including those that actually were brought and never litigated. Although the *Rein* court held that the doctrine of *res judicata* barred the second cause of action because all of the requirements were met, we believe that *Rein* is distinguishable. The *Rein* court devoted much of its analysis to the rule against claim-splitting and relied upon the rule in support of its decision. *Rein*, 172 Ill. 2d at

7

339-43, 665 N.E.2d at 1206-08. Indeed, the *Rein* court expressly noted that, in the particular case before it, "[p]laintiffs' quandary *** arises from their decision to split their lawsuit into separate actions by dismissing the common law counts of their complaints, *while attempting to litigate* [3] the rescission counts in *Rein I*, and then refiling *both*[4] the common law and rescission counts in *Rein II*." (Emphasis added.) *Rein*, 172 Ill. 2d at 339-40, 665 N.E.2d at 1206.

As the *Rein* court also explained:

"If plaintiffs were permitted to proceed on their common law counts, any plaintiff could file an action with multiple counts, dismiss some but not all of the counts, obtain a final judgment on the undismissed counts, and if unsuccessful on the counts not dismissed, refile the previously dismissed counts. Such a practice would impair judicial economy and would effectively defeat the public policy underlying *res judicata*, which is to protect the defendant from harassment and

---

[3] The *Rein* plaintiffs "attempted to litigate" the rescission counts by voluntarily dismissing the action for the purpose of appealing the dismissed rescission counts after the trial court denied Rule 304(a) language. In the instant case, plaintiffs did not voluntarily dismiss their action for the purpose of splitting it or appealing part of it.

[4] Plaintiffs in *Rein* were relentless and apparently added insult to injury. Not only did they split their cause of action, but, after the unsuccessful appeal of the statutory rescission counts, they actually refiled those counts, as well as the common law ones that had never been litigated.

the public from multiple litigation.  Moreover, an interpretation contrary to that reached here would emasculate Rule 304(a) by allowing a plaintiff to circumvent a trial judge's denial of a Rule 304(a) certification by refiling previously dismissed counts following an unsuccessful judgment or appeal on counts not previously dismissed." *Rein*, 172 Ill. 2d at 343, 665 N.E.2d at 1208.

None of the policy concerns of the *Rein* court come into play here.  *Rein* stands for the proposition that "a plaintiff seeking to split his claims and appeal in a piecemeal manner may be barred by *res judicata*." *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 507, 687 N.E.2d 871, 876-77 (1997).  *Rein* is procedurally different from the instant case.  Plaintiffs were not trying to circumvent any court ruling and acted properly.  First, plaintiffs here asserted all the grounds of recovery in their pleadings in one lawsuit. See *Handley v. Unarco Industries, Inc.*, 124 Ill. App. 3d 56, 66, 463 N.E.2d 1011, 1019 (1984).  Second, after Ford moved for and obtained partial summary judgment on parts of plaintiffs' claims, plaintiffs did not seek to challenge that decision or appeal under Rule 304(a).  Third, after voluntarily dismissing their action, plaintiffs never filed an appeal pursuant to Rule 301.  Fourth, when they refiled their complaint, plaintiffs ultimately only sought recovery for the seatbelt counts which had not ever been litigated.  *Rein* should not be extended to the facts of the instant case, which is totally free of claim-splitting.  We think this distinction is critical.  We believe that claim-splitting requires an affirmative action on the part of a plaintiff, such as dismissing a case in order to appeal it, and then filing a second suit.  We do not think a voluntary dismissal amounts to claim-splitting merely because part of the claim has previously been ruled upon and only part remains.  Because

plaintiffs never attempted to appeal or in any way litigate that part of their complaint that had been dismissed, this case is distinguishable from *Rein* and it cannot be said that Ford was harassed by unnecessary litigation.

Therefore, *Rein* is inapplicable because of the crucial distinction that plaintiffs did not attempt to further litigate the unsuccessful claims and then, after an unsuccessful appeal, attempt to litigate the remaining claims in another action. Unlike the plaintiffs in *Rein*, they did not voluntarily dismiss their case *for the purpose of appealing* the partial summary judgment. Plaintiffs here effectively did what any plaintiff does who voluntarily dismisses a case and later refiles. Apart from the fact that Ford had obtained partial summary judgment, thus eliminating certain allegations from plaintiffs' counts, which nonetheless remained,[5] Ford was in no different position than any other defendant who, under section 2-1009, is voluntarily dismissed without prejudice from a lawsuit. Ford was not subjected to the type of harassment that *res judicata* and the closely related rule against claim-splitting are designed to prevent. Unlike the *Rein*

---

[5]Because no entire "count" was dismissed but, rather, mere suballegations in two of the counts, plaintiffs have contended that there was no final judgment for purposes of *res judicata*.

plaintiffs,[6] plaintiffs here did not make Ford further litigate the partial summary judgment only to refile and make Ford litigate a second action.

To hold that *res judicata* applies in the instant case would be exalting form over substance. It cannot be emphasized enough that the doctrine of *res judicata* is an equitable doctrine to be used to shield a defendant from abusive practices or repetitious litigation. We do not believe that it should be used as a sword by a defendant for the sole purpose of avoiding litigation on the merits. Our supreme court has refused to apply the doctrine where doing so would deprive a plaintiff of his day in court for a timely asserted claim, despite the fact that there

---

[6] The plaintiffs in *Rein* were clearly engaging in practices that run counter to the doctrines of fairness and judicial economy. Not only did they take the initial appeal, only to refile after they lost, but they refiled the very counts that had already been addressed in that appeal.

1-04-3800

was an adjudication on the merits of another claim that arose from the same transaction. See *Nowak v. St. Rita High School*, 197 Ill. 2d at 392, 757 N.E.2d at 479. Thus, we do not believe *res judicata* bars these claims.

Assuming *arguendo* that *Rein* applies to the instant case, plaintiffs have also argued that Ford has waived its defense of *res judicata* by failing to assert it in a timely manner and has acquiesced in the litigation in *Piagentini II*. We agree. The failure of a defendant to object to a plaintiff's claim-splitting constitutes an acquiescence. *Thorleif Larsen & Son, Inc. v. PPG Industries, Inc.*, 177 Ill. App. 3d 656, 662, 532 N.E.2d 423, 427 (1988). Where a defendant has acquiesced, this court has refused to apply *res judicata*, due to the manifestly unjust result that the plaintiff would be denied any remedy whatsoever on the separate claim. *Thorleif Larsen*, 177 Ill. App. 3d at 662-63, 532 N.E.2d at 427.

Plaintiffs contend that by litigating this case for 3½ years before it raised the *res judicata* argument, Ford arguably lost any benefit the doctrine was designed to provide and Ford cannot now argue that it was unjustly burdened. More importantly, this court believes that it would hardly be "equitable" to allow Ford to successfully raise *res judicata* after the parties litigated this case for 3½ years. Plaintiffs have spent money on experts, discovery and all of the other costs associated with bringing a lawsuit.

Ford did not raise the defense of *res judicata* at the time of the refiling. Ford contends that *res judicata* did not arguably apply until the case of *Estate of Cooper ex rel. Anderson v. Humana Health Plan, Inc.*, 338 Ill. App. 3d 845, 789 N.E.2d 361 (2003) was published.[7] The

---

[7]Ford's timing argument is belied by the fact that the *Cooper* defendants filed

1-04-3800

*Cooper* court applied the holdings in *Rein* and *Dubina*[8] to facts similar to those in the instant case, and concluded that the partial summary judgment entered in the first lawsuit filed by plaintiff became a final judgment upon the voluntary dismissal of the remaining claims and barred the second refiled suit. Ford now asserts that *Cooper* is dispositive and that the doctrine of *res judicata* barred plaintiffs' second lawsuit.

We cannot say that we agree with Ford's contention that *Cooper* is dispositive. The *Cooper* court did not discuss the equitable nature of the doctrine of *res judicata*, nor did it discuss claim-splitting. In the instant case, Ford concedes that, in applying *Cooper*, the trial

---

their *res judicata* defense in 2001. Moreover, Ford filed its motion to dismiss more than one year after the *Cooper* case was published.

[8]*Dubina* held that "[an] order of voluntary dismissal, because it disposed of all matters pending before the circuit court, rendered all orders which were final in nature, but which were not previously appealable, immediately final and appealable." *Dubina*, 178 Ill. 2d at 503, 687 N.E.2d at 875.

13

judge also did not address the equitable nature of the doctrine of *res judicata*. For these reasons, we determine that the trial court abused its discretion in allowing Ford to raise the defense of *res judicata*. See *Mountbatten Surety Company, Inc. v. Szabo Contracting, Inc*., 349 Ill .App. 3d 857, 876, 812 N.E.2d 90, 106 (2004) (noting that this court reviews a trial court's decision whether to allow a party to raise an affirmative defense under an abuse of discretion standard).

Our supreme court has explained that in order to determine whether a trial court has abused its discretion in deciding whether to allow a party to amend its pleading, we should look at the following factors: (1) whether the proposed amendment would cure a defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading can be identified. *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273, 586 N.E.2d 1211, 1215-1216 (1992). Our application of these factors, particularly factors two and three, confirm our decision that the trial court abused its discretion here. By failing to raise its *res judicata* argument until May 13, 2004, three and a half years after the second action was filed, which was also three months prior to the trial date, Ford waived its defense. Due to the untimely nature of Ford's *res judicata* defense, its application would create inequitable and unjust results. Again, we believe that the equitable doctrine of *res judicata* was intended to be used as a shield, not a sword. *Thornton v. Williams*, 89 Ill. App. 3d 544, 548, 412 N.E.2d 157, 160 (1980).

In any event, assuming, *arguendo*, that *Cooper* was "a correct extension" of *Rein* and *Dubina*, under the particular circumstances of the instant case, we believe that it would be

inequitable to now mechanistically apply *Cooper*. We cannot fault Ford's counsel for relying on the fortuitous publication of a case that arguably supports the defense. Nonetheless, if a defendant is truly being "unnecessarily harassed by a multiplicity of lawsuits," it would appear that the defendant would know it at the time the suit is filed and need not await the publication of a case to realize it.

For all of the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.

O'MARA FROSSARD and NEVILLE, JJ., concur.