RONALD PIAGENTINI *et al.*, Plaintiffs-Appellants, v. FORD MOTOR COMPANY, Defendant-Appellee.

First District (4th Division)   No. 1—04—3800

Opinion filed January 15, 2009.

Corboy & Demetrio, P.C., of Chicago (Michael K. Demetrio and Thomas F. Boleky, of counsel), for appellants.

Donohue Brown Mathewson & Smyth LLC, of Chicago (John A. Krivicich and Karen Kies DeGrand, of counsel), for appellee.

## MODIFIED PURSUANT TO SUPERVISORY ORDER

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiffs, Ronald Piagentini and Annette Piagentini, appealed from an order of the trial court granting defendant Ford Motor Company's motion for summary judgment based upon *res judicata*. We issued an opinion reversing and remanding the case on May 12, 2006, and modified our opinion upon denial of rehearing on June 23, 2006 (*Piagentini v. Ford Motor Co.*, 366 Ill. App. 3d 395, 852 N.E.2d 356 (2006), *vacated*, 228 Ill. 2d 552, 886 N.E.2d 1025 (2008)). The Illinois Supreme Court issued a supervisory order on July 8, 2008, directing us to vacate our judgment and reconsider this case in light of *Hudson v. City of Chicago*, 228 Ill. 2d 462, 889 N.E.2d 210 (2008), to determine whether a different result is warranted. We have examined our judgment and have determined that *Hudson* does not change the result. We reverse and remand.

### BACKGROUND

Plaintiffs' claims against defendant, Ford Motor Company (Ford), arose from a motor vehicle accident that occurred in Chicago, Illinois. Plaintiff Ronald Piagentini was driving a 1987 Ford Bronco II that collided with another vehicle. Plaintiffs originally filed suit on November 10, 1994, against the alleged driver[1] of the other vehicle claiming that the driver sped through a red light. This case was numbered 94 L 14330 and will be referred to as *Piagentini I*. On March 2, 1995, plaintiffs amended their complaint to add Ford as a defendant.

Plaintiffs' eight-count amended complaint contained four counts against Ford. Counts I and II were brought by Ronald Piagentini. Count I sounded in strict liability in tort. Count II sounded in negligence. Both counts contained, in subparagraphs a, b, and c, allegations that the Bronco was designed with insufficient stability in swerving maneuvers and was unreasonably susceptible to rolling over.

---

[1]There were two individuals in the other vehicle and plaintiffs alleged that one of the two was the driver.

Additionally, both counts contained, in subparagraphs d, e, and f, allegations that the Bronco lacked an adequate seatbelt/occupant protection system. Counts V and VI were brought by Annette Piagentini for loss of consortium and repeated the allegations in counts I and II.

On February 19, 1999, based upon plaintiffs' failure to disclose any expert witness testimony substantiating the allegations of stability and rollover defects, the trial court entered an agreed order for partial summary judgment on the stability and rollover allegations contained in subparagraphs a, b, and c. The trial court dismissed plaintiffs' complaint and granted plaintiffs leave to replead only those claims pertaining to allegations of a defective driver's seatbelt.[2] Neither plaintiffs nor Ford requested Rule 304(a) language (155 Ill. 2d R. 304(a)).

On March 19, 1999, plaintiffs filed a second amended complaint and omitted the allegations pertaining to vehicle stability that were the subject of the partial summary judgment. Subsequently, on November 5, 1999, pursuant to section 2—1009 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—1009 (West 2000)), plaintiffs voluntarily dismissed the remaining claims. The trial court granted the motion without prejudice and without costs. At no point in time did plaintiffs appeal the February 19, 1999, order granting partial summary judgment.

On October 20, 2000, within one year of the voluntary dismissal, plaintiffs refiled this cause of action. The case was assigned a number of 00 L 12145 and will be referred to as *Piagentini II*. All previous allegations, including those related to the vehicle stability and rollover tendency, as well as its seatbelt/occupant protection system, were included. On January 2, 2001, apparently after realizing this error, plaintiffs filed an amended complaint that did not contain any allegations related to the stability or rollover claims, but instead only contained allegations relating to a defective seatbelt/occupant protection system.

Three and a half years later, on May 13, 2004, which was also three months prior to the trial date, Ford filed a motion for summary judgment in which it invoked the equitable doctrine of *res judicata*. Ford argued that the February 19, 1999, court order granting partial summary judgment in *Piagentini I*, which disposed of only those allegations relating to the stability and rollover claims, operated as a bar to any and all causes of action filed after plaintiffs' voluntary dismissal taken on November 5, 1999. On July 27, after full briefing

---

[2]In its motion for partial summary judgment, Ford had conceded that plaintiffs had disclosed expert witness testimony to substantiate the allegations of a seatbelt defect.

and argument, the trial court granted Ford's motion for summary judgment. The trial court subsequently denied plaintiffs' motion for reconsideration on November 29, 2004. This timely appeal followed.

## STANDARD OF REVIEW

Our standard of review of a trial court's grant of summary judgment is *de novo*. *City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n*, 362 Ill. App. 3d 556, 560, 840 N.E.2d 1283, 1287 (2005).

## ANALYSIS

■ Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334, 665 N.E.2d 1199, 1204 (1996). *Res judicata* is an equitable doctrine that is designed to prevent a multiplicity of lawsuits between the same parties where the facts and issues are the same. *Murneigh v. Gainer*, 177 Ill. 2d 287, 299, 685 N.E.2d 1357, 1363 (1997). "*Res judicata* promotes judicial economy by preventing repetitive litigation and [additionally] protects parties from being forced to bear the unjust burden of relitigating essentially the same case." *Arvia v. Madigan*, 209 Ill. 2d 520, 533, 809 N.E.2d 88, 97 (2004). Equity dictates that the doctrine of *res judicata* will not be technically applied if to do so would create inequitable and unjust results. *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.*, 189 Ill. App. 3d 638, 650, 545 N.E.2d 481, 489 (1989). *Res judicata* should not be applied by this court where it would be fundamentally unfair to do so. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390, 757 N.E.2d 471, 477 (2001). The doctrine should only be applied as fairness and justice require. *Best Coin-Op*, 189 Ill. App. 3d at 650, 545 N.E.2d at 489.

■ Illinois courts also adhere, as a matter of public policy, to a general rule against the splitting of claims or causes of action. *Best Coin-Op*, 189 Ill. App. 3d at 657, 545 N.E.2d at 493. Under the rule against claim-splitting, where a cause of action is in its nature entire and indivisible, a plaintiff cannot divide it in order to maintain separate lawsuits. *Best Coin-Op*, 189 Ill. App. 3d at 657, 545 N.E.2d at 493. That is, a plaintiff is not permitted to sue for part of a claim in one action and then sue for the remainder in another action. *Rein*, 172 Ill. 2d at 340, 665 N.E.2d at 1206. Rather, the law requires that a plaintiff must assert all the grounds of recovery he may have against the defendant, arising from a single cause of action, in one lawsuit. *Handley v. Unarco Industries, Inc.*, 124 Ill. App. 3d 56, 66, 463 N.E.2d 1011, 1019 (1984); see also *Morris v. Union Oil Co. of California*, 96 Ill. App. 3d 148, 421 N.E.2d 1011 (1981) (a party must set out in his

pleadings all of the grounds of recovery he may have). A plaintiff cannot preserve the right to bring a second action after loss of the first merely by limiting the theories of recovery opened by the pleadings in the first action. *Best Coin-Op*, 189 Ill. App. 3d at 657, 545 N.E.2d at 493.

The rule against claim-splitting, which has been described as an aspect of the law of preclusion, is based upon the principle that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of lawsuits. *Rein*, 172 Ill. 2d at 340, 665 N.E.2d at 1207; *Saxon Mortgage, Inc. v. United Financial Mortgage Corp.*, 312 Ill. App. 3d 1098, 1109, 728 N.E.2d 537, 545 (2000). Plaintiffs cannot indulge in piecemeal litigation. *Radosta v. Chrysler Corp.*, 110 Ill. App. 3d 1066, 1068, 443 N.E.2d 670, 672 (1982).

At the time when this appeal commenced, the controlling authority on claim-splitting was the supreme court's holding in *Rein* that a plaintiff engages in claim-splitting where, after an involuntary dismissal of a part of his claim, the plaintiff voluntarily dismisses the entire action for the purpose of appealing that decision and then later attempts to refile a new action. *Rein*, 172 Ill. 2d 325, 665 N.E.2d 1199. In *Rein*, there were two cases and two sets of appeals. In the first case (*Rein I*), plaintiffs filed a complaint against a securities dealer and a salesman, alleging that the defendants fraudulently misrepresented the nature of certain securities purchased by the plaintiffs. The complaint contained counts that sought rescission of the purchase pursuant to section 13 of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1989, ch. 121½, par. 137.13) (rescission counts) and other counts seeking common law remedies (common law counts). The trial court granted defendants' motion to dismiss the rescission counts with prejudice as barred by the applicable statute of limitations (see Ill. Rev. Stat. 1989, ch. 121½, par. 137.13(D)). *Rein*, 172 Ill. 2d at 329, 665 N.E.2d at 1202. The trial court refused to make a Rule 304(a) finding (155 Ill. 2d R. 304(a)), which would have allowed an immediate appeal. *Rein*, 172 Ill. 2d at 330, 665 N.E.2d at 1202. Plaintiffs then voluntarily dismissed the remainder of the case, *i.e.*, the common law counts, for the purpose of filing an appeal, under Rule 301 (155 Ill. 2d R. 301), as to the dismissal of the rescission counts. *Rein*, 172 Ill. 2d at 330, 665 N.E.2d at 1202. The appellate court determined that the rescission counts were barred by the applicable statute of limitations and affirmed the decision of the trial court. *Rein*, 172 Ill. 2d at 330, 665 N.E.2d at 1202.

After the unsuccessful appeal, and approximately 19 months after they had voluntarily dismissed the remaining counts of their complaint, plaintiffs refiled the entire case, both the rescission counts

and the common law counts (*Rein II*). The complaint was "virtually identical" to the complaint filed in *Rein I*. *Rein*, 172 Ill. 2d at 331, 665 N.E.2d at 1202. The circuit court dismissed both sets of counts based on *res judicata*. The appellate court affirmed, with a strong dissent by Justice Rathje. The Illinois Supreme Court ultimately affirmed.

Although recognizing that the express language of sections 2—1009 and 13—217 of the Code (735 ILCS 5/2—1009, 13—217 (West 2000)) appeared to give plaintiffs the absolute right to refile voluntarily dismissed common law counts within one year after the voluntary dismissal or within the remaining period of limitations, the Illinois Supreme Court, in *Rein*, pronounced that these sections should not be read to automatically immunize a plaintiff against the bar of *res judicata* when the voluntarily dismissed counts are refiled. *Rein*, 172 Ill. 2d at 342-43, 665 N.E.2d at 1208.

In our original opinion, we distinguished *Rein* on the grounds that the plaintiff in that case voluntarily dismissed the complaint for the purpose of appealing the dismissal of the rescission counts. We noted that *Rein* stands for the proposition that " 'a plaintiff seeking to split his claims and appeal in a piecemeal manner may be barred by *res judicata*.' " *Piagentini*, 366 Ill. App. 3d at 401, 852 N.E.2d at 361, quoting *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 507, 687 N.E.2d 871, 876-77 (1997). We determined that the plaintiffs in *Piagentini* had not engaged in claim-splitting because they had not attempted to appeal or in any way litigate the allegations in the complaint that had been dismissed, either before or after the voluntary dismissal. *Piagentini*, 366 Ill. App. 3d at 401-02, 852 N.E.2d at 362.

The supreme court rejected this reasoning in *Hudson*, calling it "a distinction without a difference." *Hudson*, 228 Ill. 2d at 478, 889 N.E.2d at 219. The court stated that "[a]n attorney's subjective motivation in taking a voluntary dismissal is not part of a *res judicata* analysis." *Hudson*, 228 Ill. 2d at 478, 889 N.E.2d at 219. The court went on to say that "[i]f a plaintiff uses sections 2—1009 and 13—217 to voluntarily dismiss and refile a claim after another part of the cause of action has gone to final judgment in a previous case, that plaintiff will have engaged in claim-splitting." *Hudson*, 228 Ill. 2d at 482, 889 N.E.2d at 222.

In *Hudson*, the plaintiffs originally filed a wrongful death action consisting of a negligence count and a willful and wanton misconduct count (*Hudson I*). The circuit court dismissed the negligence count with prejudice and continued the cause of action as to the willful and wanton misconduct count. The plaintiffs continued litigating the willful and wanton misconduct count for three years and then voluntarily dismissed the lawsuit pursuant to section 2—1009 of the Code.

Plaintiffs then refiled within the time limitation allowed under section 13—217 of the Code, pleading only the willful and wanton misconduct count (*Hudson II*). Defendants moved to dismiss *Hudson II* pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 2000)), claiming that it was barred by *res judicata*. The trial court granted the motion to dismiss and the appellate court affirmed.

The supreme court agreed, holding that "[o]nce the voluntary dismissal was entered, *Hudson I* was terminated in its entirety and all final orders became immediately appealable." *Hudson*, 228 Ill. 2d at 468, 889 N.E.2d at 214, citing *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 503, 687 N.E.2d 871 (1997). The court further explained that *Rein* "stands for the proposition that a plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a *res judicata* defense." *Hudson*, 228 Ill. 2d at 473, 889 N.E.2d at 217. In light of this holding, we must now determine whether the February 19, 1999, order in *Piagentini I* was a final order that became immediately appealable upon plaintiffs' voluntary dismissal of November 5, 1999.

■ We hold that the February 19, 1999, order was not a final order for two reasons. First, partial summary judgment was granted as to certain allegations within separate counts of the complaint but no actual count was dismissed. Second, the order dismissed the complaint in its entirety but expressly granted plaintiffs 28 days in which to replead those allegations relating to defective seatbelts.

Plaintiffs' complaint included two separate counts or theories of recovery against Ford: negligence and strict liability.[3] Both counts alleged seatbelt defects. Both counts also alleged an insufficient stability design that created a susceptibility to rolling over. Plaintiffs argue that for *res judicata* to apply, an order must be entered on a claim and not just an issue within a claim. Because Ford only attacked the sufficiency of subparagraphs within each claim in its motion for summary judgment, plaintiffs contend it was never granted relief on any separate claim. Ford responds that a claim is not limited to a "count" or a "cause of action" but the issue is whether the order applies to a separate portion of the subject matter.

A final order is one which "either terminates the litigation

---

[3]Although the complaint included six counts, counts III and VI were against a defendant other than Ford while counts IV and V were filed on behalf of Annette Piagentini for loss of consortium and repeated the allegations in counts I and II. Two counts against a third defendant had been dropped from the complaint filed in *Piagentini I*.

between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate branch thereof." *Hull v. City of Chicago*, 165 Ill. App. 3d 732, 733, 520 N.E.2d 720, 721 (1987). For an order to dispose of a separate branch of a controversy, the bases for recovery of the counts which are dismissed must be different from those which are left standing. *Rice v. Burnley*, 230 Ill. App. 3d 987, 991, 596 N.E.2d 105, 107 (1992).

In *Rein*, the rescission counts were dismissed, while the common law counts remained standing. In *Hudson*, the negligence count was dismissed in its entirety, while the willful and wanton misconduct count remained standing. In the instant case, certain allegations under the negligence count were dismissed, and certain allegations under the strict liability count were dismissed, but both counts remained standing as bases for recovery. This court has held that the dismissal of certain allegations under a single theory of recovery does not terminate litigation between the parties on the merits or dispose of the rights of the parties on a separate branch of the controversy. *Rice*, 230 Ill. App. 3d at 992-93, 596 N.E.2d at 107. Rather, the dismissal of certain allegations under one theory of recovery merely determines which allegations under that theory are allowed to remain. *Hull*, 165 Ill. App. 3d at 733, 520 N.E.2d at 721. Therefore, the agreed order granting partial summary judgment on certain allegations under the theory of negligence and certain allegations under the theory of strict liability was not final because allegations still remained under each base for recovery.

In addition to granting Ford's motion for partial summary judgment, the February 19, 1999, order states, "[plaintiff's] complaint is dismissed, [plaintiff] is granted 28 days to replead only those claims pertaining to allegations of a defective drivers seatbelt." An order dismissing a complaint is not final "unless its language indicates the litigation is terminated and the plaintiff will not be permitted to replead." *Cole v. Hoogendoorn, Talbot, Davids, Godfrey & Milligan*, 325 Ill. App. 3d 1152, 1153, 759 N.E.2d 110, 112 (2001). The February 19, 1999, order gave plaintiffs 28 days to replead and defendants an additional 21 days to respond. Our supreme court has held that an order granting leave to amend indicates there has been no final disposition of the case and thus it cannot be considered a final order. *Smith v. Central Illinois Regional Airport*, 207 Ill. 2d 578, 585, 802 N.E.2d 250, 254 (2003). In *Smith*, the plaintiff had been granted 60 days in which to amend the complaint and had filed a motion to voluntarily dismiss under section 2—1009 of the Code within the 60-day period. The supreme court noted that because the order expressly left the suit pending for further proceedings, the plaintiff was allowed

not only to amend the complaint but also to pursue any other option available, including standing on the complaint and seeking an order to dismiss with prejudice in order to obtain a final judgment. *Smith*, 207 Ill. 2d at 588, 802 N.E.2d at 256. In the instant case, the order expressly granting plaintiffs leave to replead the defective seatbelt allegations indicates there had been no final disposition of the case and thus cannot be considered a final order.

An order dismissing a complaint but granting leave to replead is not final until the trial court enters an order dismissing the suit with prejudice. See *Smith*, 207 Ill. 2d at 588, 802 N.E.2d at 256; *Jackson v. Victory Memorial Hospital*, 387 Ill. App. 3d 342, 351 (2008) (and cases cited therein). In *Jackson*, the trial court granted defendant's motion to dismiss but granted plaintiff leave to replead. Plaintiff requested and received several extensions while attempting to retain counsel, and then moved to voluntarily dismiss the complaint under section 2—1009 of the Code. Plaintiff subsequently refiled the complaint and the trial court granted defendant's motion to dismiss on the grounds that the complaint was barred by *res judicata. Jackson*, 387 Ill. App. 3d at 343. On appeal, the Second District reversed and remanded, finding that an order dismissing a complaint is not final until the trial court enters an order dismissing the suit with prejudice. *Jackson*, 387 Ill. App. 3d at 352. Here, as in *Jackson*, the trial court never entered an order dismissing the suit with prejudice but instead granted plaintiff's motion for voluntary dismissal. A voluntary dismissal is a dismissal without prejudice. See 735 ILCS 5/2—1009 (West 2000). While *Hudson* stands for the proposition that a voluntary dismissal terminates the suit in its entirety, rendering all final orders immediately appealable (*Hudson*, 228 Ill. 2d at 468, 889 N.E.2d at 214), we find no authority for the proposition that a nonfinal order becomes final upon voluntary dismissal of a suit. See *Jackson*, 387 Ill. App. 3d at 351-52.

Because the February 19, 1999, order was not a final order for the aforementioned reasons, we hold that *res judicata* does not bar plaintiffs' suit against Ford and the trial court erred in granting Ford's motion for summary judgment.

Assuming *arguendo* that the February 19, 1999, order was in fact a final order that became immediately appealable under the rule set forth in *Hudson* when plaintiffs voluntarily dismissed the lawsuit, we must next consider whether any of the six recognized exceptions apply in this case. The supreme court has adopted the exceptions to the rule against claim-splitting set forth in section 26(1) of the Restatement (Second) of Judgments (Restatement (Second) of Judgments §26(1) (1982)). *Hudson*, 228 Ill. 2d at 472, 889 N.E.2d at 216. Under the first

exception, the rule against claim-splitting will not apply if "the parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein." Restatement (Second) of Judgments §26(1), at 233 (1982). We believe this exception is applicable in this case.[4]

Plaintiffs contend that Ford acquiesced to *Piagentini II* based on its active and ongoing pursuit of the litigation for 3½ years before filing a motion for summary judgment on *res judicata* grounds a few months before the trial was set to begin. Plaintiffs point out that during that time, Ford filed affirmative defenses more than once, never asserting *res judicata* as a defense. Moreover, Ford participated in discovery, retained experts, attended numerous depositions and jointly suggested a possible trial date. Ford initially contends that plaintiffs waived this argument by not raising it until after the trial court granted Ford's motion for summary judgment. Alternatively, Ford argues that this exception contemplates an agreement, either express or implied, between the parties, and that such an agreement did not exist. Moreover, Ford contends that merely defending the case does not constitute acquiescence.

As an initial matter, we note that both parties seem to conflate the first and second parts of this exception. The exception applies if the parties have agreed in terms or in effect to the claim-splitting *or* if the defendant has acquiesced in the claim-splitting. Ford suggests that acquiescence involves express or tacit *agreement*. We disagree. The first part of the exception involves an agreement, whether in terms or in effect. The second part of the exception involves acquiescence. According to Black's Law Dictionary, to acquiesce is "[t]o accept tacitly or passively; to give implied consent to (an act)." Black's Law Dictionary (8th ed. 2004). We find no evidence of any agreement between the parties, either in terms or in effect, so we must determine whether the defendant acquiesced. Very little guidance is provided, either in the Restatement or in case law, as to what constitutes acquiescence for purposes of an exception to the rule against claim-splitting.

Ford proposes that the supreme court has offered guidance on the nature of acquiescence in *Hudson*. The court said, in *dicta*, that "if an attorney is considering taking a voluntary dismissal after a final judgment has been entered on part of his case, he can seek the defendant's acquiescence in the refiling." *Hudson*, 228 Ill. 2d at 479, 889 N.E.2d at 220. We note that the defendant's express consent to the refiling would constitute an agreement, not an acquiescence. They are discrete concepts.

---

[4]The five remaining exceptions are not pertinent to this case.

The comments for section 26 of the Restatement indicate that a defendant's failure to object to the claim-splitting constitutes an acquiescence. Restatement (Second) of Judgments §26, Comment *a*, at 234-35 (1982). The only example provided in the Restatement involves a plaintiff who is simultaneously maintaining separate actions based upon parts of the same claim. Restatement (Second) of Judgments §26, Comment *a*, at 234-35 (1982). If the defendant does not make known his objection in either action, he has acquiesced in the claim-splitting. However, whether the claim-splitting has occurred by filing two actions simultaneously, as in the Restatement example, or by voluntarily dismissing a suit and subsequently refiling, as in *Hudson*, the key element in determining acquiescence is the failure of the defendant to object to the claim-splitting.

Plaintiffs rely on *Thorleif Larsen & Son, Inc. v. PPG Industries, Inc.*, 177 Ill. App. 3d 656, 532 N.E.2d 423 (1988), in support of their contention that Ford acquiesced. The plaintiff in *Thorleif Larsen* filed two suits on the same day involving the same construction project, one in Cook County and one in Du Page County. *Thorleif Larsen*, 177 Ill. App. 3d at 657, 532 N.E.2d at 424. Defendant moved to dismiss the Cook County action, arguing that plaintiff was not without remedy as it had a pending action in Du Page County which was set for trial. *Thorleif Larsen*, 177 Ill. App. 3d at 662, 532 N.E.2d at 427. Ford argues that in *Thorleif Larsen*, it was the defendant's representation to the Cook County trial judge that plaintiff would have a remedy in Du Page County that constituted acquiescence. We disagree. After noting defendant's representation to the trial court in the Cook County action, the court observed that defendant then went on to defend the Du Page County action and that the record disclosed no objection on the part of the defendant to the claim-splitting. *Thorleif Larsen*, 177 Ill. App. 3d at 662, 532 N.E.2d at 427. The court concluded that defending the action with no objection to the claim-splitting constituted acquiescence, not the defendant's representation that plaintiff would have a remedy because of the second suit. *Thorleif Larsen*, 177 Ill. App. 3d at 662-63, 532 N.E.2d at 427. Although *Thorleif Larsen* involved the same type of claim-splitting as in the Restatement example, it is the defendant's failure to object to the claim-splitting, no matter how that claim-splitting occurs, that constitutes acquiescence.

In *Rein*, the supreme court stated that the failure of the defendants to object to the voluntary dismissal did not constitute an acquiescence in the refiling of plaintiffs' common law counts. *Rein*, 172 Ill. 2d at 342, 665 N.E.2d at 1207. The court said that the appropriate time for the defendant to object was when plaintiffs attempted to refile the

common law counts. *Rein*, 172 Ill. 2d at 342, 665 N.E.2d at 1207. Similarly in *Hudson*, defendants filed a motion to dismiss after plaintiffs refiled the willful and wanton misconduct count, and there is no mention of any delay on the part of defendants in filing. *Hudson*, 228 Ill. 2d at 466, 889 N.E.2d at 212-13. Here, in contrast, Ford filed several responses that included affirmative defenses but made no mention of *res judicata*. Ford then proceeded to respond to discovery, retain experts, attend depositions, and defend the lawsuit for 3½ years before filing a motion for summary judgment on the basis of *res judicata*. We hold that Ford's failure to file a timely objection when plaintiffs refiled their suit constitutes an acquiescence and, as such, is an exception to the rule against claim-splitting.

Alternatively, plaintiffs argue that even if Ford did not acquiesce, a defendant can waive the defense of *res judicata* and Ford's failure to object in a timely fashion constituted a waiver. Ford responds that under the liberal standard for amending pleadings contained in section 2—616(a) of the Code (735 ILCS 5/2—616(a) (West 2000)), a defendant is allowed to raise an affirmative defense even after the parties have conducted extensive discovery as long as the timing has not prejudiced the plaintiff by impairing his ability to respond. Both parties cite case law in support of their respective positions on this issue. We believe that the acquiescence discussion above subsumes waiver and compels the same conclusion on this issue.

For all of the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand this matter for further proceedings consistent with this opinion.

Reversed and remanded.

O'MARA FROSSARD and NEVILLE, JJ., concur.